AUGUST A. STAVROS *et al.*, Plaintiffs-Appellees, *v.* ZEV KARKOMI *et al.*, Defendants.—(ARNOLD I. KRAMER, Respondent-Appellant.)

(No. 60410;

First District (4th Division)—May 14, 1975.

*Rehearing denied June 9, 1975.*

Arnold I. Kramer, *pro se.*

Calvin Sawyer, of Chicago, for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This appeal arises out of an action brought by plaintiffs-appellees, to enter a rule upon Arnold I. Kramer, respondent-appellant, to show cause why he should not be punished for failing and refusing to comply with a final injunctional order entered on July 20, 1971. In response to plaintiffs' motion for a rule, Kramer filed a special and limited appearance challenging the court's jurisdiction over his person. On May 7, 1974, the court entered an order denying Kramer's special appearance and enforcing the terms of the July 20, 1971 injunction. Kramer appeals solely from the order of May 7, 1974.

This is the second occasion on which matters concerning this case have been before us on appeal. In the first appeal, we affirmed the Circuit Court's order of July 20, 1971. (*Stavros v. Karkomi*, 14 Ill.App.3d 355.) While the record is set out somewhat fully in that opinion, we deem it necessary to reiterate many of the facts here.

The controversy arose out of a contract for the purchase of real estate between the owners, plaintiffs-appellees, and Zev Karkomi. The contract involved successive conveyances of various parcels and required that a deed to Parcel 6 be placed in escrow with the Chicago Title and Trust Company. With the exception of Parcel 4, Karkomi made no payments of either principal or interest under the contract, and accordingly, plaintiffs served notice of default on him. Thereafter, on December 7, 1970, suit was filed seeking a quit-claim deed to Parcel 6 and a permanent injunction "against defendant Karkomi, or any person acting on his behalf * * * or having notice of this law suit, from taking any action which involves any assertion of any claim in or to any part of the real estate covered by the Contract involved in this suit, except Parcel 4 thereof * * *." The complaint further sought $100,000, the amount deposited in escrow by defendant, as specific recompense to plaintiffs for purchaser's total breach of the contract.

On April 14, 1971, the parties entered into a written settlement agreement that culminated in the entry of a consent decree on May 14, 1971. In the decree the court reserved jurisdiction solely for the purpose of effectuating the provisions of its order. Immediately thereafter, Karkomi failed to comply with the decree. On June 14, 1971, plaintiffs moved for a rule to show cause why he should not be held in contempt of court and for the forfeiture of his interest in and to the real estate involved. On June 21, 1971, Arnold I. Kramer filed his appearance for defendant and presented a petition to vacate the May 14, 1971, decree on the ground of misrepresentations. Attached to the petition was the affidavit of Ben J. Rosenthal, attorney for Karkomi, setting forth that because of illness, he

was unable to appear or file any pleadings. Therein, he also swore to Kramer's allegations of material misrepresentations. He further asserted that illness of Kramer's parents prevented Kramer from properly responding to plaintiffs' petition for a rule to show cause. Accordingly, the affidavit requested a short continuance of the matter. A hearing was set for June 30, 1971. Plaintiffs served a notice addressed to Arnold I. Kramer requesting that he bring to the hearing on his petition, all papers, documents, etc., relating to the alleged misrepresentations.

On June 30, 1971, Kramer presented a petition for a change of venue, and the cause was continued to July 8, 1971. On that day a hearing was held, and the court instructed plaintiffs to prepare a decree directing Karkomi to execute the terms of the consent decree and upon failure to do so, ordering the sheriff of Cook County to execute the documents in his stead. The court continued all matters to July 13, 1971. On that day, Ben J. Rosenthal filed a second affidavit, again reciting that because of illness he was unable to appear or file any pleadings. Therein he requested a continuance on the matter of defendant's petition for a change of venue, and reiterated the earlier allegations of material misrepresentations.

On July 20, 1971, a final injunction was entered specifically reciting that: (1) The court had examined the files and considered the evidence attached to the pleadings; (2) that plaintiffs made no misrepresentations of fact upon which defendant reasonably could have relied; (3) that Arnold I. Kramer was not only a co-venturer with Karkomi, but that Kramer also appeared as counsel for Karkomi and received all notices as participating counsel even though his written appearance was recently filed; (4) that the alleged basis for a change of venue was known, or should have been known, by Karkomi, his co-venturer or agents (including Arnold I. Kramer) long before the case was filed, the final consent order was entered, and plaintiffs' motion for a rule to show cause was filed; and (5) that for several weeks defendant had been in wilful default under the May 14 decree.

The court found no just reason to delay the enforcement of the decree and therefore ordered that: (1) Karkomi immediately execute written instructions to Chicago Title and Trust that the existing deed and mortgage to Parcel 6 be cancelled and that the $100,000 deposited in escrow be distributed to plaintiffs as restitution for the expenses and losses caused by them; (2) that Karkomi further execute and deliver to plaintiffs a quit-claim deed to all parcels except Parcel 4; and (3) that in the event Karkomi should fail to execute the specified documents within 5 days, the sheriff of Cook County was authorized and directed to execute and deliver the specified documents in the name of Karkomi.

On August 11, 1971, plaintiffs' petition for a rule to show cause came

on for a hearing along with defendant's petitions for a change of venue and to vacate the consent decree of May 14, 1971. The trial judge repeatedly stated to defense counsel that he was willing to hear any evidence on the matter of alleged misrepresentations; however, Kramer presented no evidence in support of his motion to vacate. An order was entered on that day reciting that the court, having heard evidence, found that defendant's affidavit in support of his request for a change in venue was filed in bad faith and not true. The court found and adjudged the defendant to be in direct contempt and set a hearing for August 18, 1971. On that latter date, Rosenthal and Kramer filed an appeal on behalf of Karkomi seeking, in part, a reversal of the orders entered on July 20 and August 11 and in the alternative a new trial. The hearing on the rule to show cause was continued pending the disposition of the appeal.

Arnold I. Kramer represented Karkomi on appeal and contended that the court erroneously denied the petition for a change of venue. He argued that as a consequence, all subsequent orders were null and void. We handed down an opinion on July 25, 1973 (14 Ill.App.3d 355), and held that the petition for a change of venue was untimely filed. We pointed out that we did not reach defendant's argument that all subsequent orders were void since the court correctly denied a change of venue. Accordingly, we affirmed the final injunction of July 20, 1971.

During the pendency of the appeal, plaintiffs learned that the land may not have been subject to the sole direction of Karkomi. Although on appeal, the order of July 20, 1971, was not stayed, since the requisite bond was not filed. Therefore, on February 15, 1972, plaintiffs moved for a rule to show cause why Karkomi, Kramer and the Exchange National Bank (as trustee) should not be held in contempt of court for failing to comply with the order of July 20, 1971. Thereafter, a rule to show cause was entered and served on the named parties. Kramer immediately filed a special and limited appearance solely to contest the jurisdiction of the court over his person. After numerous continuances, the matter came upon the set call on plaintiffs' petition for a rule to show cause in connection with the July 20, 1971 order; and on May 22, 1972, the court ordered that the Exchange National Bank be enjoined from dealing in any way with Parcel 6, and that plaintiffs respond to Kramer's special appearance. On June 5, 1972, plaintiffs moved to strike Kramer's special appearance.

On March 8, 1974, plaintiffs further moved for a disposition of the cause pursuant to our mandate affirming the order of July 20, 1971. They asserted, in part, that Kramer previously had been found to be a coventurer by the court, and that at all times from the inception of and during the negotiations for the purchase of the property, he was active

as a party in interest and as an attorney in fact as well as attorney at law. Plaintiffs urged that any interest or claim Kramer may have had in the subject property was bound by the final adjudication of the July 20, 1971, order.

On March 14, 1974, Arnold I. Kramer was ordered to file a response and counter affidavits to plaintiffs' motion. Thereafter, on April 19, 1974, Kramer filed a memorandum in support of the special and limited appearance he had filed in his own behalf. He objected to the court's jurisdiction over his person and his property rights on the alleged basis that he was never a party to the lawsuit, but rather was merely a co-counsel for Karkomi.

Plaintiffs filed a memorandum in support of their motion for disposition of the cause on April 29, 1974. While they admitted that Kramer was not initially a party to the lawsuit, they asserted that he had been personally served, in the same manner as service of process, with a copy of the court's injunction of July 20, 1971, now affirmed on appeal, and with the court's order to show cause. Plaintiffs thus urged that Kramer was properly before the court as respondent, not to the original suit for cancellation of the land contract, but to the court's efforts to enforce its final injunction. It was alleged that Kramer was not a successor or assignee of Karkomi, but rather, as the court had previously determined, a co-venturer and party in interest. Plaintiffs further argued that Kramer was not only in privity with Karkomi, but also was in active concert or participation with him. Thus, it was argued that in view of Kramer's full interest and participation in all proceedings, before, during and after the appeal, he stood in the same position as Karkomi, and as such he was clearly bound by res judicata as if he were named party to the action. Attached to the memorandum was a copy of the rule to show cause entered on February 15, 1972, which ordered Kramer and others to show cause why they should not be required to execute documents necessary to effectuate the July 20, 1971, order or be held in contempt of court.

The matter was culminated on May 7, 1974, with the entry of an order from which Kramer pro se solely appeals. In pertinent part the order found that the court had jurisdiction over the person of Arnold I. Kramer for the purpose of effectuating its injunctional order of July 20, 1971. The court found that Arnold I. Kramer, although not a formal defendant in the proceedings, "has so participated herein and holds such an adjudicated and admitted interest in the property involved in this case that he is bound by the proceedings and orders herein and his special appearance should be denied." Accordingly, Kramer's special appearance was denied. The court also denied a second petition to vacate the consent decree filed by Kramer on May 11, 1972.

Kramer contends that since he was not a named party to the lawsuit, the court lacked jurisdiction to enter a permanent mandatory injunction affecting his personal interest in the subject property. He argues that in order to invoke such jurisdiction, it is necessary that he be served with a summons and complaint. Thus, Kramer argues that the proper procedure would have been for plaintiffs to commence a new action against him or to amend the existing lawsuit so as to make him a party defendant; but to proceed as they did deprived him of due process of the law.

Plaintiffs contend that Kramer had been accorded due process of the law in every particular and that the court was fully justified, if not compelled, to find jurisdiction over his person. Plaintiffs stress that Kramer received notice of and was present at all court proceedings, and that he shared identical rights with Karkomi as a co-venturer. Therefore, plaintiffs argue that while he was not named party to the original suit, he was in legal effect a party to the proceedings and subject to the July 20, 1971, injunction.

In support of his argument, Kramer emphasizes that the order of July 20, 1971, directed only Karkomi to execute and deliver certain documents, and did not require any action from him. He further points out that plaintiffs made no attempt to affect his personal rights in the subject property until after the final order was entered. On this basis, Kramer claims that plaintiffs deliberately circumvented his due process rights by failing to name him as a party to the lawsuit. He states:

> "This maneuver becomes clear upon the fact that the plaintiffs did not seek to directly effect [sic] the respondent's interests in and to the real estate for which he paid $100,000.00 to the plaintiffs, until May, 1974, although they were well aware of the respondent's interest in the property from at least October 15, 1970."

We reject this claim. Despite Kramer's strenuous assertions to the contrary, it appears to us that plaintiffs did not learn of Kramer's interest in the property until after the entry of the July 20, 1971, order; and therefore, any attempt to affect his interest would by necessity postdate the order. The record further establishes that once plaintiffs learned that the property may not have been subject to the sole direction of Karkomi, they immediately filed a motion for a rule upon Kramer and the land trustee to show cause why they should not carry out that order. Both Kramer and the land trustee were served with copies of the motion.

Kramer does not deny that he was present in court and fully cognizant of all matters and orders relating to these proceedings. In fact, on May 9, 1972, he filed an affidavit reciting that:

> "[A]t all times from the inception and during the negotiations for the purchase of the property [Kramer] was active in negotiations

and with the subsequent development and attempted development of said property as a party in interest, and collaborator, and attorney in fact, as well as attorney at law, from time to time, for Zev Karkomi, in connection with said property."

His thorough involvement in the proceedings is both clear and undenied. The complaint for injunctive relief which resulted in the order of July 20, 1971, specifically requested that "a permanent injunction issue against defendant Karkomi *or any person acting on his behalf* * * * or having notice to this lawsuit" from asserting any claim to the subject real estate, and that defendant Karkomi be ordered to execute and deliver to plaintiffs a quit-claim deed to Parcel 6. Even a cursory review of the record demonstrates that the order of July 20 was a well-considered determination. When that order was appealed to this court, it was Kramer who filed the briefs and orally argued the appeal. He solely contended that the aforementioned order was void because the court erred in denying the petition for a change of venue. At that time he did not divulge that he had a personal interest in the property and to the $100,000 deposited in escrow with Chicago Title and Trust. Furthermore, when Kramer filed an affidavit on May 9, 1972, in support of a second petition to vacate the consent decree, he again made no assertion that he possessed a personal interest in the subject matter and could not be bound by the orders of the court.

■■ We hold that there is no merit to Kramer's contention that the court lacked jurisdiction to enter the order of May 7, 1974, binding him to the provisions of the July 20, 1971, order. The record is clear that both before and after the entry of the July 20 order, the court offered Kramer every opportunity to support his claims. If there were any conflict of interest between him and Karkomi, he had full opportunity to be heard on the merits, but Kramer declined.

■■ Section 3—1 of the injunctions act (Ill. Rev. Stat. 1971, ch. 69, par. 3—1) unequivocally delineates those persons who are bound by an injunctional order. Section 3—1 provides in pertinent part:

"Every order granting an injunction and every restraining order * * * is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." (Ill. Rev. Stat. 1971, ch. 69, par. 3—1.)

Kramer strenuously argues that section 3—1 applies only to restraining orders since the section is entitled "Temporary Restraining Order; Notice; Hearing; Duration." Thus, he contends that section 3—1 is inapplicable to the case at bar inasmuch as the order of July 20, 1971, was a permanent

injunction. We feel such rigid·reliance upon the section title is misplaced. We cannot ignore the plain language of the statute which expressly en-compasses injunctions, and not merely restraining orders. From this lan-guage, it is beyond peradventure that Kramer is bound by the injunctive orders of the court, including the order of July 20, 1971.

Section 3—1 closely parallels, and in relevant part is identical to, Rule 65(d) of the Federal Rules of Civil Procedure. In *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, the United States Supreme Court recognized that the provision is a codification of the common-law·doctrine that a decree of injunction not only binds the parties defendant, but also those identified with them in interest, in privity with them, represented by them, or sub-ject to their control. The doctrine is a necessary one for the courts must have the power and authority to enforce their official mandates in a sum-mary and effective manner. (*O'Brien v. People ex rel. Kellogg Switchboard & Supply Co.*, 216 Ill. 354.) As the court explained in *O'Brien*:

> "To say otherwise would render them powerless and inefficient.
> * * * As we have said, the court had jurisdiction of the persons
> and the subject matter of the suit and issued the injunction, which
> was not only binding upon the persons who were actual parties de-
> fendant to the bill, but was also binding upon all persons who had
> actual notice of the contents * * *." (216 Ill. 354, 367.)

Thus, it is clear that one may be bound by an injunctional order, although he is not formally named as a party to the lawsuit. All that need be estab-lished is the requisite involvement and that actual notice was received. Clearly, these are questions of fact, the determination of which should not be lightly set aside on appeal.

The order of May 7, 1974, recited that after hearing evidence and con-sidering matters of record, and after receiving the mandate of this court affirming the order of July 20, 1971, the court concluded that Arnold I. Kramer and others were in privity or participated with Karkomi in re-spect to the subject matter of the injunctional order of July 20, 1971. We find all of the conclusions therein to be amply supported by the evidence and matters of record. The consent decree was known and approved by all the parties and Kramer participated in the unsuccessful move to vacate it. Kramer's insistence that he was acting only as co-counsel for Karkomi would require a strained conclusion on our part, and we think this repre-sentation to be incredible.

██ The order of July 20, 1971, was the product of reasoned considera-tion. So too was the order of May 7, 1974, which can only be characterized as nothing less than a proper and necessary exercise of judicial authority to effectuate the court's earlier. order. Throughout these proceedings Kramer was provided with the due process requirements of notice and an

opportunity to be heard. We recognize and appreciate that a mandatory permanent injunction is an extraordinary remedy which is not granted as a matter of right, but in the exercise of sound judicial discretion and to be used only in cases of great necessity. (*Cook County Police Association v. City of Harvey*, 8 Ill.App.3d 147, 289 N.E.2d 226.) However, we find no abuse of discretion here. See *People ex rel. Scott v. Master Barbers & Beauty Culturists Association*, 9 Ill.App.3d 981, 293 N.E.2d 393.

We have carefully reviewed the cases cited by appellant and find them to be distinguishable. Accordingly, we find no need to discuss them here. Suffice it to say that they are distinguishable on the facts or involve different issues of law.

For the reasons stated the judgment of the circuit court is affirmed.

Affirmed.

DIERINGER, P. J., and ADESKO, J., concur.