AUGUST A. STAVROS *et al.*, Plaintiffs-Appellees, *v.* ZEV KARKOMI *et al.*, Defendants.—(EXCHANGE NATIONAL BANK OF CHICAGO, Trustee, *et al.*, Respondents.)

First District (4th Division) No. 60386

Opinion filed May 26, 1976.—Rehearing denied June 28, 1976.

Robert Jay Nye, of Nye and Nye, of Chicago, for respondents.

Calvin Sawyer, of Chicago, for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The instant appeal arose out of a breach of a real estate contract entered into by the plaintiffs, August A. Stavros, James Stavros, Maurice

M. Nesset, and Wheeling Bank and Trust Company, as trustee, and the original defendant, Zev Karkomi. Subsequent to serving a notice of default and forfeiture on the defendants Karkomi and Chicago Title and Trust Company, as escrowee, the plaintiffs filed a complaint on December 7, 1970, seeking, among other things, a quitclaim deed reconveying the real estate in question and a permanent injunction against the defendant Karkomi or any individual either acting in his behalf, succeeding to his interest, or having notice of the lawsuit from taking any action which involved "any assertion of any claim in or to any part of the real estate covered by the contract." Pursuant to a stipulation entered into by the parties, the controversy was apparently settled when the trial court entered a decree in accordance with the agreement of the parties.

However, as a result of the defendant Karkomi's failure to comply with such decree, ancillary enforcement proceedings ensued in which the trial court issued variegated orders affecting not only the original parties but Arnold Kramer, a co-venturer and beneficial interest holder with the defendant Karkomi, Exchange National Bank of Chicago (hereinafter referred to as Exchange), the trustee and naked title holder and Parkway Bank and Trust Company (hereinafter referred to as Parkway), who had acquired as assignee the beneficial interests of the defendant Karkomi and Kramer in such land interests. These proceedings, whose duration encompassed a time span of approximately three years, culminated with the entry by the trial court of an order on May 7, 1974. In the aforesaid order, the court, after concluding that it had jurisdiction over the subject matter of proceedings, namely, the effectuation of its injunctive order of a prior date, denied Parkway's special appearance and required Exchange to execute a quitclaim deed concerning the disputed property.

On appeal, Exchange and Parkway seek a reversal of this May 7, 1974, order on the bases that (1) the trial court had no jurisdiction to enter such order affecting their rights and interests because, even though they were necessary parties, they were never named nor made parties to this suit; (2) such order directing the execution of documents divesting the appellants of their rights and interests in the real estate in question infringed their constitutional rights to due process of law, and (3) it was not incumbent upon them to intervene to protect their interests; rather, the onus was on the plaintiffs to name them as parties and have proper process served upon them.

Before delving into the pertinent facts surrounding the controversy at bar, it is important to note that this case comes before us for the third time on appeal. In our two prior reviews of this action, we respectively affirmed the trial court's orders of July 20, 1971, which denied the petition of the defendant Karkomi for a change of venue (*Stavros v. Karkomi*, 14 Ill. App. 3d 355, 302 N.E.2d 420) and of May 7, 1974, wherein the trial

court denied Arnold Kramer's special appearance (*Stavros v. Karkomi*, 28 Ill. App. 3d 996, 329 N.E.2d 563). Although the instant appeal stems from the same order entered May 7, 1974, the parties at bar were not at issue until a considerable period of time subsequent to our second review of this matter. However, even though the instant appellants as well as the issues posited for review are divergent from those involved in the previous considerations of this matter, the factual scenario underlying this appeal is analogous to its predecessors. Thus, while the prior two opinions have accurately depicted what transpired in this case, a reiteration of such facts is crucial, especially insofar as they relate to the instant appellants, Exchange and Parkway.

A review of the record reveals that on October 8, 1969, the plaintiffs, owners of the entire beneficial interest in certain land trusts, entered into an amended real estate contract with the defendant, Zev Karkomi, for the purchase of certain property. Subsequent to the defendant's failure to pay both the principal and interest pursuant to the contract, the plaintiffs served notice of default and forfeiture upon him and thereafter commenced suit on December 7, 1970, against Karkomi and Chicago Title and Trust Company, as escrowee of a certain parcel of land contained in the contract. This action sought injunctive relief against Chicago Title and Trust Company to prevent such entity from delivering a deed to the property held in escrow to any person other than the plaintiffs. Besides requesting a temporary and permanent injunction against the defendant Karkomi, his agent, successor, or any individual having notice of the lawsuit from "taking any action involving any assertion of any claim in or to any part of the real estate" contained in the contract in question, the plaintiffs also sought a court order requiring the defendant Karkomi to execute a quitclaim deed to a certain parcel of land designated in the contract as Parcel 6. On December 11, 1970, a *lis pendens* notice was filed of such action affecting the property contained in the contract in which Parcel 6 was specifically described therein.

While the defendant Karkomi initially responded to this complaint by filing a motion to strike on January 18, 1971, as well as assigning, along with Arnold Kramer, their beneficial interests in a particular land trust which included Parcel 6 to Parkway on March 16, 1971, he subsequently entered into a written stipulation on April 14, 1971, with the plaintiffs, in which they agreed to settle this dispute pursuant to the entry of an order by the trial court. Although the trial court entered such order on May 14, 1971, the defendant Karkomi failed to adhere to its provisions. This prompted the plaintiffs to file on June 14, 1971, a motion for the entry of a rule to show cause why the defendant Karkomi should not be held in contempt of court for failure to comply with the decree entered on May 14, 1971, and for the forfeiture of his interest in and to the real estate

involved and for other relief. The defendant, through Arnold Kramer, who was appearing due to an illness of the defendant's regular attorney, Ben Rosenthal, countered such motion by presenting, at a hearing conducted on June 21, 1971, a petition to vacate the May 14, 1971, consent decree on the grounds of misrepresentation etc. In response to the affidavit submitted by Ben Rosenthal seeking a short continuance of the matter, the trial court set the cause for a hearing on June 30, 1971. Thereafter, counsel for the plaintiff served notice on Arnold Kramer requesting that he bring to the hearing all papers, documents, etc., relating to the alleged misrepresentations.

On June 30, 1971, the plaintiffs renewed their contention that the defendant Karkomi had failed to comply with the agreed order of May 14, 1971. Thereafter, Arnold Kramer presented a petition for a change of venue on behalf of the defendant Karkomi in which it was alleged that the trial judge was prejudiced against him. The trial court denied this petition and then set a date for a hearing on the rule to show cause as well as on all other pending matters.

After two respective continuances, the hearing was resumed by the trial court on July 20, 1971. Subsequent to examining the various files and considering all the evidence attached to the pleadings, the trial court found that (1) the plaintiffs did not make any misrepresentations of fact upon which the defendant could have detrimentally relied; (2) Arnold Kramer was not only a coventurer with the defendant Karkomi in the instant matter, but he also appeared as counsel and received all notices as participating counsel despite the fact that his written appearance was only recently filed; (3) the alleged basis for a change of venue was or should have been known by the defendant Karkomi or his co-venturers or agents (including Kramer) long before the case was filed; and (4) the defendant wilfully was in default of the terms of the final order entered on May 14, 1971. Having concluded that there was no just reason to delay the enforcement of this May 14, 1971, decree, the trial court not only denied the defendant's petition to vacate such edict, but ordered the defendant Karkomi to immediately execute written instructions to the defendant Chicago Title and Trust Company to cancel the existing deed and mortgage to Parcel 6 and that the $100,000 deposited in escrow be distributed to the plaintiffs as restitution for the expenses and losses caused by them. The defendant Karkomi was further ordered to execute and deliver to the plaintiffs a quitclaim deed to Parcel 6 as well as other parts of the subject premises described in the May 14, 1971, order. Moreover, in the event the defendant failed to execute the specified documents within five days, the Sheriff of Cook County was authorized to execute and deliver them in his name.

Besides issuing the above order, the trial court, in a separate order

issued on the same date, set a hearing for August 5, 1971, regarding the defendant's affidavits in support of his motions for a continuance, change of venue and why he should not be held in contempt under the rule to show cause. On that date, the trial court, in another order, denied *nunc pro tunc* as of July 20, 1971, the defendant's petition for a change of venue on the basis that the defendant was attempting to thwart the effect of the May 14, 1971, decree. Moreover, on August 11, 1971, the trial court, after hearing testimony elicited from the defendant Karkomi as well as the plaintiff James Stavros, found that the defendant Karkomi's affidavit was filed in bad faith since its true purpose was to attain more time for the defendant who had already consented to a final decree. The court then adjudged the defendant Karkomi in direct contempt of court and set a hearing concerning punishment on August 18, 1971.

At the hearing conducted on such date, the trial judge continuously inquired whether counsel for the defendant Karkomi had any evidence that he wished to offer in support of his assertion that the May 14, 1971, order was based upon misrepresentation or fraud. When defense counsel failed to introduce any evidence to support his petition to vacate, an order was entered by the court denying such petition *nunc pro tunc* as of July 20, 1971. The defendant Karkomi responded to such judicial action by filing an appeal seeking in part, a reversal of the orders entered on July 20 and August 11, 1971, and, in the alternative, a new trial.

On appeal, the defendant Karkomi was represented by Kramer and solely contended that the trial court erroneously denied his petition for a change of venue, thus rendering all subsequent orders void. In affirming the trial court on July 25, 1973 (14 Ill. App. 3d 355, 360, 302 N.E.2d 420, 424), we held that the petition for change of venue was untimely filed and made for purposes of delay in order to avoid a hearing on the merits of the controversy.

During the pendency of the above enunciated appeal, the plaintiffs discovered that the realty in question may not have been under the exclusive direction of the defendant Karkomi. On February 10, 1972, the defendant Chicago Title and Trust Company, acting as an insurer of land titles, informed the plaintiffs that an escrowed deed of a land trust to Exchange, as trustee, had been recorded and, in spite of the order entered July 20, 1971, title to Parcel 6 would not be guaranteed unless Exchange and the holders of the beneficial interest in such land trust were noticed in before the court. Accordingly, the plaintiffs served a notice and motion for a rule to show cause against the defendant Karkomi, Kramer, and one Arthur Strilky[1] as the beneficial owners, and Exchange as trustee for

[1] It was eventually disclosed that Arthur Strilky's interest in the land trust terminated on February 22, 1971.

failure to comply with the order entered on July 20, 1971. On February 15, 1972, this notice and motion was filed and an order for a rule to show cause was entered and served on the named parties. Moreover, at the hearing conducted by the trial court on February 15, 1972, the plaintiffs initially became cognizant of the name of Parkway as assignee of Karkomi to the land trust in question and immediately sent the latter entity a copy of the motion which had attached to it the order of July 20, 1971, as well as the order of the rule to show cause. Thereafter, Kramer, Exchange and Parkway were personally served with a copy of the rule to show cause that had been entered.

After numerous continuances extending over a period of approximately one month, in which another *lis pendens* notice, naming Exchange and Parkway, was filed on April 4, 1972, the trial court entered an order on April 13, 1972, in which it set a hearing for May 11, 1972, and directed that process be served upon Exchange, Parkway, and Kramer. In response to this order, Kramer, who had already filed his special appearance, submitted on May 11, 1972, as attorney for Parkway, a special and limited appearance solely to contest the trial court's jurisdiction over such entity. On May 22, 1972, the trial court, subsequent to hearing evidence regarding the owners of the beneficial interests in the land trust in question, entered an order (1) enjoining Exchange from dealing in any manner with the title to Parcel 6 and (2) requiring the plaintiffs to respond to the special appearance of Kramer and Parkway. While Exchange entered a general appearance on May 25, 1972, the plaintiffs complied with the latter aspect of the above order by moving to strike both special appearances on June 5, 1972. Although the plaintiffs submitted a motion for an order denying the defendant Karkomi's petition to vacate, to which the latter responded, the trial court continued all matters before it generally pending disposition of the first appeal from the order entered July 20, 1971.

As previously mentioned, we affirmed the decision of the trial court on July 25, 1973, concerning the venue issue. Subsequent to the filing of a copy of the affirming order with the Clerk of the Circuit Court of Cook County, the plaintiffs submitted on March 8, 1974, their motion for disposition of the cause pursuant to our mandate. On March 14, 1974, the trial court entered an order requiring Parkway and Exchange to file any response and counteraffidavits to the plaintiffs' motion which was set for hearing and disposition on April 22, 1974. Exchange was first to file its response to the plaintiffs' dispositional motion and challenged the trial court's jurisdiction over its trust property on the bases that (1) it was not a named party to the instant lawsuit, nor (2) was it taking any position regarding such controversy since it was a mere naked land trustee of certain real estate involved in the case at bar. Kramer withdrew as counsel

for Parkway on April 5, 1974, and the trial court reset the hearing concerning the plaintiffs' motion to May 7, 1974. Parkway, through its substituted counsel responded on April 10, 1974, to such motion to dispose of the cause by also objecting to the trial court's jurisdiction over it on the grounds that it was never named a party to the original lawsuit nor to the rule to show cause referred to in the plaintiffs' contested motion.

On April 29, 1974, the plaintiffs responded to the above assertions by filing a memorandum in support of their motion for disposition of the cause in accordance with the mandate of this reviewing court. To substantiate such position, they posited that pursuant to the Illinois Injunction Act (Ill. Rev. Stat. 1973, ch. 69, par. 3—1) the trial court had jurisdiction to enforce, upon remand, its final injunctive order of July 20, 1971, against Parkway and Exchange since they were in privity with the parties to the original suit and were bound by the doctrine of *lis pendens* as if they were named parties to such suit.

Subsequent to Parkway filing a hearing memorandum in support of its response on May 7, 1974, as well as counsels for Parkway, Exchange, and the plaintiffs presenting their positions at a hearing conducted on the same date, the trial court issued an order finding in pertinent part that (1) it had jurisdiction over the subject matter of such proceeding, namely, the effectuation of its injunctive order of July 20, 1971, as well as of Exchange, as trustee, and Kramer for being in privity of participation with the original named defendants in respect to the subject matter of injunctive order of July 20, 1971; (2) Kramer, although not a formal defendant in the proceedings, had so participated as well as held such an adjudicated and admitted interest in the property involved in the instant case so as to bind him by the proceedings; and (3) since Parkway's interest, which it acquired by virtue of an assignment from Kramer and the defendant Karkomi, related solely to personal property, Parkway had no interest in the legal title to Parcel 6 and as a result of its failure to intervene, it forfeited the right to assert an interest in these proceedings by way of a special appearance. The trial court then (1) denied the petition filed by the defendant Karkomi on May 18, 1972 to vacate the previous agreed upon decree, (2) ordered Exchange to immediately execute a quitclaim deed to Parcel 6 to the plaintiffs and (3) denied the special appearances of Kramer and Parkway as well as bound the former to the injunctive orders entered in these proceedings.

On May 13, 1974, Exchange and Parkway filed a notice of appeal seeking a reversal and remand of the order entered May 7, 1974, and all orders and rulings contained therein. These entities also submitted a motion requesting a stay, pending such appeal, of the enforcement of the

May 7, 1974, order which the trial court denied on the same date. Besides Exchange and Parkway seeking a review of the above order of the trial court, Kramer also filed a separate notice of appeal on May 17, 1974. He also contended that since he was not a named party to the original lawsuit and was not served with summons, the trial court lacked jurisdiction to enter a permanent mandatory injunction affecting his personal interest in the property at bar. In an opinion handed down on May 14, 1975 (28 Ill. App. 3d 996, 329 N.E.2d 563), we held that despite the fact that Kramer was not formally named a party to the lawsuit, he was still bound by the injunctive order in light of his active involvement throughout the course of these proceedings in which he was afforded notice and an opportunity to be heard.

Although Exchange and Parkway proffer various issues to be considered on review, the dominant theme pervading such bases of appeal evolves around whether the trial court had jurisdiction over the instant appellants who were never joined nor named as parties to the instant case despite their contention that they were necessary parties within the purview of the Illinois Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, pars. 24, 25). While counsel for Exchange and Parkway resort to both statutory as well as judicial authority in support of their mutual positions, we believe that when each appellant's alleged interest in the real estate and land trust affected by the order presently on appeal is analyzed within the context of other legal precepts, it is apparent that the lower court has jurisdiction and the order entered on May 7, 1974, must be affirmed.

With regard to Exchange, section 3—1 of the Illinois Injunction Act delineates the individuals who are bound by an injunctive order by providing in pertinent part that:

> "Every order granting an injunction * * * is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." (Ill. Rev. Stat. 1973, ch. 69, par. 3—1.)

While counsel for Exchange contraverts the application of this section to the instant case on the basis that such provision is confined solely to situations involving negative and not mandatory injunctions, we foster a contrary belief. In the first place, judicial construction of this legislative enactment has not adopted a posture in accordance with such assertion. Moreover, in light of the plain language of this statutory provision which pertains to "every order granting an injunction," it logically follows that section 3—1 is not relegated to negative injunction, but encompasses

factual scenarios wherein affirmative equitable relief is sought. Thus, it would appear that Exchange's contention is unsubstantiated and without merit.

We are also of the opinion that even though Exchange was not formally named a party to the lawsuit, it was bound by the injunctive orders of the trial court, including the order of July 20, 1971. As noted in our second opinion concerning whether the trial court had jurisdiction over Arnold Kramer, we held there that one may be bound by an injunction although he is not a named party to such action provided that the requisite involvement and receipt of actual notice is established. (*Stavros v. Karkomi*, 28 Ill. App. 3d 996, 1003, 329 N.E.2d 563, 569.) Applying this bifurcated tenet to the instant case, it is evident that Exchange falls within the purview of section 3—1 of the Illinois Injunction Act (Ill. Rev. Stat. 1973, ch. 69, par. 3—1) and is bound by the trial court's injunctive orders. As the record reveals, Exchange acted as trustee under a certain land trust in which it was initially subject to the directions of such active beneficial interest holders as the defendant Karkomi and Arnold Kramer. Moreover, as trustee, Exchange not only was a party to a particular Chicago Title and Trust escrow which concerned the transfer of title to Parcel 6 under the original real estate contract between the plaintiffs and the defendant Karkomi, but such entity thereafter held record title as grantee to such parcel of land. This latter factor heightened Exchange's involvement in the instant case because once Chicago Title and Trust discovered that an escrowed deed of the land trust in question had been recorded by Exchange, it refused on February 10, 1972, to guarantee title to Parcel 6 unless the plaintiffs noticed in Exchange as well as the beneficial interest holders of such land trust before the trial court. This demand resulted in Exchange being personally served by the plaintiffs with (1) a notice and motion for a rule to show cause for failure to comply with the order entered July 20, 1971; (2) a copy of the rule to show cause that had been entered; and (3) process informing such entity of a hearing set for May 11, 1972. Subsequent to the trial court entering an order enjoining Exchange from dealing in any manner with the title to Parcel 6, the latter entered its general appearance on May 25, 1972, and, after the plaintiffs submitted their motion for disposition of the cause pursuant to our mandate regarding the venue issue, it was first to respond to such motion by challenging the trial court's jurisdiction over its trust property. In light of such evidence, we therefore conclude that, even though Exchange (1) characterized itself as a mere naked land trustee of certain real estate in the controversy at bar and (2) did not take a position concerning resolution of the matter in dispute, such entity clearly was involved in the realty at issue and received actual notice of the pending

ancillary enforcement proceedings so as to be bound by the order entered by the trial court on May 7, 1974.

■■ We further believe that there is no credence to Parkway's contention that the trial court lacked jurisdiction over it on the basis that it was a necessary party, but was never named to the original lawsuit nor to the rule to show cause proferred by the plaintiffs. While reviewing courts place special emphasis on the requirement of joinder of necessary parties (see, *e.g.*, *National Bank v. S.N.H., Inc.*, 32 Ill. App. 3d 110, 121, 336 N.E.2d 115, 124; *Glickauf v. Moss*, 23 Ill. App. 3d 679, 683, 320 N.E.2d 132, 136) and have found constitutional infringements where such mandate was not fulfilled (*Safeway Insurance Co. v. Harvey*, 36 Ill. App. 3d 388, 392, 343 N.E.2d 679, 682; *Clark v. Village of Milan*, 3 Ill. App. 3d 569, 572, 277 N.E.2d 895, 897), they do not automatically conclude that any individual or entity *claiming* an interest in the particular subject matter at bar is a necessary party. Rather, to be a necessary party, the individual or entity involved must have a present substantial interest, as opposed to a mere expectancy or future contingency (*McDonald's Corporation v. Smargon*, 31 Ill. App. 3d 493, 497, 334 N.E.2d 385, 388), in the controverted matter such that this legal entanglement cannot be resolved without either (1) affecting that interest or (2) leaving the interest of those who are before the court in an embarrassing or inequitable position. *E.g.*, *Georgeoff v. Spencer*, 400 Ill. 300, 302-03, 79 N.E.3d 596, 597; *National Bank v. S.N.H., Inc.*, 32 Ill. App. 3d 110, 120-21, 336 N.E.2d 115, 123-24.

Considering such legal tenets in terms of the facts surrounding the instant case, we are of the opinion that Parkway does not have a present substantial interest in this matter to warrant a conclusion that it is a necessary party. It is well settled in Illinois that when a valid assignment is effected, the assignee (1) acquires all of the interest of the assignor in the property that is transferred and (2) stands in the shoes of the assignor. (*E.g.*, *Buck v. Illinois National Bank & Trust Co.*, 79 Ill. App. 2d 101, 106, 223 N.E.2d 167, 169.) Moreover, the assignee of a contract for the purchase of real estate acquires no greater rights in the property than were possessed by his assignor, the original contract vendee (*Miller v. Pettengill*, 392 Ill. 117, 122, 63 N.E.2d 735, 738) and takes the assignor's interest subject to all legal and equitable defenses existing at the time of assignment. (*Rose v. Dolejs*, 1 Ill. 2d 280, 290, 116 N.E.2d 402, 409.) As previously mentioned, the defendant Karkomi and Kramer, on March 16, 1971, assigned their beneficial interests in a particular land trust which included Parcel 6 to Parkway. However, it was adjudicated during the course of these ancillary enforcement proceedings that by virtue of the defendant Karkomi's and Kramer's default and forfeiture under the original contract entered with the plaintiffs, such assignors had no interest

in Parcel 6. Accordingly, because Parkway stands in the shoes of Karkomi and Kramer and the latters' interests were held to be nonexistent, such entity is not a necessary party in the instant case.

Besides Parkway not being a necessary party, the fact that a *lis pendens* notice was filed on December 11, 1970, further evinces why it was not incumbent upon the plaintiffs to name such entity as a party to the original lawsuit nor to their rule to show cause. According to the legislative enactment concerning the doctrine of *lis pendens*, every suit in equity, which effects or involves real property, shall, from the time a notice is filed setting forth the title and parties to the cause, where such action is brought, and the real estate involved, "be constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person * * * shall * * * be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he were a party thereto." (Ill. Rev. Stat. 1973, ch. 22, par. 53.) In chastising the applicability of such statute to the case at bar, Parkway contends that it does not have "an interest in or a lien on the property affected" because it merely holds a personal property beneficial interest in the land trust in question. Although we do not controvert Parkway's characterization of its interest, we do believe that such interest does subject Parkway to the dictates annunciated in the above legislative provision.

■█■ While we are cognizant that the doctrine of *lis pendens* is not applicable unless the property involved in the instant litigation is of a character which is subject to the doctrine (*People ex rel. Baker v. Wilson*, 39 Ill. App. 2d 443, 446, 189 N.E.2d 1, 3), it has been held that such doctrine is not solely confined to real estate (*Suess v. Stapp*, 407 F.2d 662, 665 (7th Cir. 1969)) but also pertains to personal property except negotiable paper. (*Reid, Murdoch & Co. v. Sheffy*, 75 Ill. App. 136, 142.) Since Parkway's interest does fall within the purview of the *lis pendens* doctrine, the trial court was correct in holding that it was not essential that Parkway be made a party to this action. As the record reveals, the plaintiffs commenced suit on December 7, 1970, in which they sought to enjoin the defendant Karkomi or "any person acting on his behalf or *as his successor in interest or having notice of this law suit*, from taking any action which involves any assertion of any claim in or to any part of the real estate * * * involved in this suit * * *." Besides properly serving the original defendants with summons so as to vest the trial court with jurisdiction over the parties and the contraverted property, on December 11, 1970, the plaintiffs filed a *lis pendens* notice of such action affecting the property contained in the contract in which Parcel 6 was specifically described therein. It was only after the transpiration of these events that Parkway acquired its beneficial interest by virtue of an assignment from

the defendant Karkomi and Kramer on January 18, 1971. Based on such evidence, it is apparent that Parkway had constructive notice of the pending suit when it took the assignment of the beneficial interests in the land trust in question. We therefore hold that Parkway was a subsequent purchaser and thus was conclusively bound by the results of these ancillary enforcement proceedings as if it had initially been a named party.

In conclusion, the contentions proffered on review by counsel Exchange and Parkway do not warrant a reversal of the trial court's order entered on May 7, 1974. As was shown above, Exchange, due to its involvement in the matter in controversy coupled with its receipt of actual notice, was bound by the trial court's prior injunctive orders despite the fact it was not formally named a party to the original lawsuit. Parkway was not a necessary party to the instant matter but was merely a post-suit assignee of two individuals whose interest in Parcel 6 had been adjudicated to be nonexistent. Further, under the *lis pendens* statute, Parkway had its day in court through the litigious efforts undertaken by the defendant Karkomi and Kramer to prevent a forfeiture of their beneficial interests in the instant land trust. In light of such findings, we believe that the other arguments proffered by the instant appellants would not dissuade our decision to sustain the trial court's order. We therefore conclude that the trial court had jurisdiction over Exchange and Parkway and properly found that the plaintiffs were entitled to be revested with record title to the subject property.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and ADESKO, J., concur.