ARNOLD I. KRAMER, Plaintiff-Appellant, *v.* CHICAGO TITLE & TRUST CO. *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-1535

Opinion filed March 28, 1979.

Donald L. Bertelle, of Chicago, for appellant.

Donald E. Egan and Irving B. Levinson, both of Katten, Muchin, Gitles, Zavis, Pearl & Galler, of Chicago, for appellee Exchange National Bank of Chicago.

Concannon, Dillon, Snook & Morton, of Chicago (John B. Dillon and Ned Langer, of counsel), for appellee Chicago Title & Trust Co.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The circuit court, on motion of the defendants, Chicago Title & Trust Co. (Chicago Title) and Exchange National Bank of Chicago (the Bank), dismissed the two-count amended complaint filed by the plaintiff, Arnold I. Kramer, and he appeals.

In the first count, the plaintiff claimed that a title to real estate insured by a title insurance policy issued by Chicago Title was defective, and that he was entitled to recover upon the policy. In the second count the plaintiff sought recovery of $100,000 he had deposited with Chicago Title as escrowee, claiming Chicago Title failed to perform its duties under an escrow relating to the property that was the subject of the title policy. The Bank was named a defendant on the ground it held title as land trustee to the property in question and wrongfully refused to join with Kramer in this action as a plaintiff.

In dismissing the first count, the circuit court relied on facts determined in prior litigation in which Chicago Title was a defendant along with Zev Karkomi. Kramer, who appeared and acted as Karkomi's attorney, was held in the prior litigation to be a co-venturer of Karkomi and as such privy to the proceedings and bound by them. The circuit court concluded that facts determined in the earlier proceedings, including the determination that Kramer was bound by those proceedings, brought the title defects within the exclusionary provisions of the title policy.

In the prior litigation Chicago Title had been ordered to pay the $100,000 escrow fund to the sellers of the property covered by the title policy to compensate them for loss and expenses caused by Karkomi and Kramer. The circuit court in dismissing the second count held that Kramer was collaterally estopped by that judgment from litigating whether he was entitled to recover the $100,000 from Chicago Title.

The prior litigation on which Chicago Title relies to invoke the doctrine of collateral estoppel or estoppel by verdict was Cause No. 70 CH 5070 in the circuit court of Cook County. The plaintiffs in that action had sold the property in question to Karkomi, and their complaint alleged failure by the purchaser to make payments. The litigation was appealed to this court three times, and dispositions of these appeals are reported as *Stavros v. Karkomi* (1973), 14 Ill. App. 3d 355, 302 N.E.2d 420; (1975), 28 Ill. App. 3d 996, 329 N.E.2d 563; and (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599. The matters determined in that proceeding which Chicago Title argues are relevant to this proceeding are: as pointed out above,

although Kramer was not named as a defendant in the litigation, he was privy to it by reason of his role as a co-venturer with Karkomi and his appearance as counsel for Karkomi in the litigation; and he was bound by the orders entered in that litigation and the facts resolved by it. Thus, Kramer was bound by an injunction directing Karkomi to reconvey title to the property in question to the persons from whom he had purchased it, and enjoining Karkomi from asserting any claim to the real estate. The title policy was issued on March 5, 1971. On that date Karkomi and Kramer were in default in payment for the property they were purchasing and the litigation which eventually determined that fact (No. 70 CH 5070) had already been instituted by the sellers, who were seeking to recapture the property. On April 4, 1971, the sellers and Karkomi entered into a settlement agreement culminating in the entry of a consent judgment on May 14, 1971, requiring Karkomi to execute and deliver to the sellers a purchase money mortgage on the property. On July 20, 1971, the circuit court entered an order finding that Karkomi was in willful default of the consent judgment. That order allowed him an additional 5 days to execute and deliver the mortgage, and provided that failing to do so Karkomi was to reconvey the property to the sellers and direct Chicago Title to pay the $100,000 in the escrow to the sellers. Karkomi failed to comply, and, consequently, on May 7, 1974, the Bank, which held legal title as trustee, was ordered to reconvey the property to the sellers, and Chicago Title was ordered to pay the escrow fund of $100,000 to the sellers. Both the July 20, 1971, and the May 7, 1974, orders of the circuit court were affirmed by this court in the appeals referred to above.

The title policy excluded from its coverage any defects, liens, and adverse claims (i) created, suffered, or agreed to by the insured claimant, or (ii) attaching or created subsequent to the date of the policy. Chicago Title argues that policy coverage in this case is excluded by these provisions. Its position is that Kramer is estopped by the prior litigation from disputing that he was guilty of a material breach of the consent order and that this resulted in the reconveyance to the sellers. Thus, Chicago Title contends that the prior litigation establishes that Kramer's own conduct caused the divestiture of his title or interest in the property. It reasons that Kramer's loss of his property was excluded from the policy's coverage, not only because the divestiture was created or suffered by Kramer's default, but in addition because his default and the consequent divestiture resulted in a defect or adverse claim created subsequent to the date of the policy.

Kramer's argument is that he is not estopped from litigating all of the matters considered in the prior proceeding even assuming he was privy to and bound by that proceeding. He contends that collateral estoppel or estoppel by verdict requires prior litigation that was identical as to

parties, subject matter, and cause of action. He points out that the subject matter of the prior litigation was a real estate contract and failure to comply with a consent order; the subject matter here is a title policy. And the parties here, Kramer and Chicago Title, were aligned as co-defendants rather than adverse parties in the prior litigation. His position, therefore, is that nothing has ever been litigated between Kramer and Chicago Title.

██ Estoppel by verdict or collateral estoppel is an extension of the doctrine of res judicata. (*Karon v. E. H. Marhoeffer, Jr. Co.* (1973), 14 Ill. App. 3d 274, 278-79, 302 N.E.2d 478.) It is based on the principle that a question once adjudicated by a proper court is to be considered as finally settled and conclusive on the unsuccessful parties. (*Lynch v. Chicago Transit Authority* (1965), 62 Ill. App. 2d 220, 210 N.E.2d 792.) Estoppel by verdict or collateral estoppel is applicable even where the parties are not arrayed on opposite sides in prior litigation or formal issues have not been drawn up between them. *Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.* (7th Cir. 1969), 416 F.2d 707, 710; *Lynch*, at 222.

This court, in *Riley v. Unknown Owners* (1975), 25 Ill. App. 3d 895, 898-99, 324 N.E.2d 78, set forth the ingredients for the application of collateral estoppel, stating:

> "A branch of res judicata, referred to as estoppel by verdict or collateral estoppel, provides the same conclusive effect when the same parties or their privies are involved with the same issues actually or necessarily finally determined by a court of competent jurisdiction in an earlier, but different, cause of action.
>
>         \* \* \*
>
> The recent trend in the law in this area is to discard the identical-parties-mutuality rule entirely and to require that only one party or his privy, the one against whom estoppel is attempted to be used, be identical in the second action, *especially when estoppel is urged defensively*. [Citations.] These courts hold that the only pertinent questions for the utilization of collateral estoppel are whether the issue decided in the prior adjudication is identical with the one presented in the suit in question, whether there had been a final judgment on the merits, and whether the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication." (Emphasis added.)

In *Rose v. Dolejs* (1955), 7 Ill. App. 2d 267, 129 N.E.2d 281, facts determined in previous litigation were held to be conclusive in later litigation although the cause of action was not the same in the two proceedings and the adverse parties in the later suit were, as in this case, both defendants in the prior litigation.

Although the suit here is to recover on a title policy, the circumstances that Chicago Title claims exclude policy coverage are the

failure to comply with the consent order and the resulting divestiture, matters fully litigated in the prior proceeding. Kramer and his co-venturer Karkomi had full opportunity in that proceeding to deny or explain their default. Kramer has already unsuccessfully litigated as a defendant the matters Chicago Title claims give rise to collateral estoppel. There is no justification for permitting him to relitigate the same issues simply because he now casts himself in the role of a plaintiff. His position is particularly unpersuasive in view of the fact that he is now attempting to assert offensively the same position that he was unable to defend, and Chicago Title is using collateral estoppel only as a shield rather than a spear.

The facts established in Cause No. 70 CH 5070 in the circuit court of Cook County and affirmed in the appeals to this court compel the conclusion the trial judge reached—that the divestiture of Kramer's title and interest to the property was the consequence of his own wrongdoing. Kramer's default, being a matter created or suffered by the insured claimant, or by the beneficiaries (both Kramer and Karkomi) of the trust under which the insured claimant holds title, caused the type of defect in Kramer's title which is excluded from policy coverage.

Kramer's default also relieves Chicago Title from liability under the provision of the title policy excluding defects and other matters "attaching or created subsequent to Date of Policy." The title policy was dated March 5, 1971. The prior litigation discloses that subsequently, on May 14, 1971, Karkomi, acting on behalf of himself and Kramer, entered into a consent judgment with the sellers of the property, pursuant to a stipulation between the parties, whereby they agreed to settle their differences concerning the property in question as well as other property. That order specifically recited that it was a final order which disposed of the controversy between the parties and that the court reserved jurisdiction of the cause only for the purpose of carrying out the provisions of the consent judgment. Had Karkomi and Kramer complied with the terms of the consent judgment, they would not have been divested of their title. However, they chose not to comply with the terms of the settlement agreement embodied in the consent judgment of May 14, 1971; and the circuit court in its order of July 20, 1971, which was affirmed on appeal in *Stavros v. Karkomi* (1975), 28 Ill. App. 3d 996 and 39 Ill. App. 3d 113, found that Karkomi "has been in willful default for several weeks under the terms of the final order entered herein May 14, 1971." It follows therefore that the order of divestiture of title to the property was the consequence of the willful default of Karkomi and Kramer, in failing to carry out the terms of the May 14, 1971, consent judgment. This is a matter "attaching or created subsequent to Date of Policy" and excluded from the policy's coverage.

Kramer also stresses that his conduct cannot be regarded as falling

within the exclusions from the coverage of the title policy because the words "created" and "suffered" as used in the exclusionary provision connote conscious, deliberate, and intentional conduct on the part of the insured. This argument is untenable even if the exclusionary provision is given the connotation urged by Kramer. The consent decree was voluntarily entered into, and had Karkomi and Kramer complied with it, they would have enjoyed undisputed title to the property. Karkomi and Kramer did nothing to prevent the divestiture, and the default which resulted in the forfeiture was a conscious, deliberate, and intentional act on their part. As the circuit court specifically found, Karkomi, and hence also Kramer because he was in privity with Karkomi, were in willful default for several weeks because of their failure to comply with the terms of the consent order. Kramer is estopped by the earlier judgment from relitigating whether his default was willful.

■■ Kramer alleges in count II with respect to his escrow deposit of $100,000 with Chicago Title: "The aforesaid sum of $100,000 was the property of Arnold Kramer and the said plaintiff is entitled [to] the return of said funds." The consent judgment directed how the $100,000 escrow deposit was to be distributed and superseded the original escrow agreement between Kramer and Chicago Title under which Kramer claims. Thus, after the entry of the consent judgment, Kramer could no longer rely on the original escrow instructions to define Chicago Title's responsibilities. The issue of who was entitled to the $100,000 escrow deposit under the consent judgment was determined in the prior litigation when the court ordered Chicago Title to pay it to the sellers for expenses and losses they incurred as a result of the willful default of Kramer and his co-venturer, Karkomi. Kramer is bound by the court's determination that the sellers were entitled to the $100,000 as a consequence of his default. He is estopped by that determination from claiming that Chicago Title, which paid the sum to the sellers in compliance with a court order, was obligated instead, by the escrow provisions, to pay the money to him.

Kramer's complaint against the Bank is that it was a necessary party to this action as holder of record title to the property in question, and although requested by Kramer to join with him as a party plaintiff, it refused to do so. The Bank's refusal has not affected Kramer's claims because we would have approved dismissals of his complaint for the reasons stated above even had the Bank been a party plaintiff. For that reason Kramer suffered no prejudice by the dismissal of the Bank.

Affirmed.

McNAMARA and RIZZI, JJ., concur.