**MADGET, Plaintiff-Appellant, v. MADGET et, Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 7059.  Decided February 21, 1949

Raymond Huwe, Cincinnati, for William Madget.
Jack G. Williams, Cincinnati, for Alma Madget.
Harry E. Marble, Cincinnati for Metropolitan Life Insurance Company.

## OPINION

By MATTHEWS, J.:

The trial court sustained a general demurrer to the amended petition and the plaintiff not desiring to plead further, judgment was rendered dismissing the action. This appeal is from that judgment.

The amended petition purports to state three causes of action. As his first cause of action, the plaintiff in substance alleges that he was the insured in a matured life insurance policy; that he had paid the premiums for the first 19 years and that the defendant, Alma Madget, who was and•is his wife, paid the premiums for the last year and until the policy matured; that thereafter the defendant insurance company issued a check for $442.80, payable to him and his wife; that his endorsement was forged on the check and that his wife appropriated the entire amount of the check to her own use, and that he "was the owner of 19/20ths of said $442.80, that said 19/20ths is his separate property and interest therein." He also alleged that his wife had become a constructive trustee of the proceeds of said check. He also alleged that he and his wife were not living together at the time she appropriated the check and its proceeds and that he was entitled to 19/20ths thereof. He prayed judgment for that amount.

As his second cause of action, the plaintiff alleges that he is entitled to the immediate possession of 19/20ths of the money collected by his wife on the check referred to in the first cause of action; that he is informed and believes that his wife has the money or a sum equal thereto on deposit in

The Provident Savings Bank and Trust Company "or in some other bank or financial institution." He asks that his wife be enjoined from withdrawing the money on deposit in said financial institutions.

As a third cause of action, the plaintiff alleges that he is the insured in two other life insurance policies (numbered 12764745 a and 15166844 a) issued by the defendant insurance company, having a present value of something over $1000.00; that he had paid the premiums for 7 years and his wife had paid them for 2 years on one policy and that he was "entitled to 7/9ths of the present value of that policy; that he had paid the premiums on the other policy for 18 years and his wife had paid them for 2 years and that he was "entitled to 18/20ths of its present value;" that his wife has possession of said policies and that unless his wife is required by order of the court to surrender the policies he will be unable to obtain his share of the cash surrender value and will suffer irreparable damage. He also alleges that the defendant insurance company has refused to take any action and has given notice that it will take no action until the rights to said policies or the proceeds thereof have been determined by a court; that he is unable to determine whether he has the right to change the beneficiary with or without the consent of the named beneficiary and under what conditions when said beneficiary has paid part of the premiums. He also alleges that he is unable to determine the rights under the policy that will accrue upon his death.

There are other allegations, but the foregoing are sufficient, we believe, to enable us to apply the determinative principles of law.

The prayer is for a declaration of rights of the plaintiff and his wife in and to the surrender or paid up value of the policies, and the duties of the defendant insurance company toward the plaintiff and his wife in relation to said surrender or paid up value of said policies.

It is the contention of the appellee wife that the allegations of this amended petition are insufficient to state a cause of action between persons other than husband and wife, and much less a cause of action in favor of a husband against his wife. We shall examine the allegations to determine whether they are sufficient in the abstract to state a cause of action, and then consider whether the fact that the plaintiff is the husband of the defendant Alma Madget prevents a recovery.

(1) While the terms of the insurance policy referred to in the first cause of action are not set forth fully, so as to be sure as to the beneficiary and the power of the insured to change and the right, if any, of the insurer to select the beneficiary, they do show that the plaintiff paid 19 of the 20 premiums and that upon the maturity of the policy the insurer named the plaintiff and his wife as co-payees of the check in discharge of its obligation. Surely, those allegations are sufficient to indicate that the plaintiff had some proprietary interest in the check and its proceeds, and the allegations as to the payments of premiums are a sufficient basis to indicate what that interest was.

When to these allegations is added the direct allegation that the plaintiff was the owner of that interest in the check and its proceeds, we think it clear that it is sufficient as an abstract statement of a cause of action when tested by a general demurrer.

In **31 O. Jur., 565 (Section 29)** it is said: "General averments of ownership are ordinarily considered averments of ultimate facts. Thus, allegations or denials that a party was, at a particular time, the owner or holder of a negotiable promissory note, though perhaps indefinite, are not objectionable on the ground of being mere conclusions of law."

Then there is another rule of construction that precludes the court from declaring this cause of action insufficient on general demurrer. This rule is, as stated in **31 O. Jur., 583,** that in accordance with §11345 GC, which provides for a liberal construction of pleadings, courts "must construe pleadings liberally in favor of the pleader."

We do not believe any extended citations of authorities are necessary to support our conclusion. It will be found that the text of Ohio Jurisprudence is supported by the citation of a long list of Ohio cases.

(2) If the second cause of action is sufficient, it must be on the theory that the allegations show the existence of a constructive trust, of which the plaintiff is the cestui que trustee, and the appellee wife is the trustee. But for a trust to exist, there must be a trust res. The only possible trust res would be the identical money paid to the wife or a specific fund into which it can be traced. However, there is no allegation that the wife still had the identical money at the time the action was filed or a fund into which it was traced.

That a res is essential to the existence of a trust is fundamental. **40 O. Jur., 186.** That the res must be identifiable .

as a separate entity, or as a part of an identifiable fund is settled. **Barrs v. Barrs Rent-A-Car Co., 71 Oh Ap, 465.** "If there is no corpus there is no trust." **Fulton v. Gardiner, 127 Oh St, 77,** at 80. When these principles are applied to the allegations of the second cause of action, we find them wanting as a statement of a cause of action to enforce a trust.

(3) In this third cause of action it is alleged that the plaintiff is the insured in two specifically identified life policies upon which he had paid certain premiums and his wife had paid other premiums; that his wife has possession of the policies; that while he owns an interest in the policies commensurate with the premiums paid by him, he has no way of asserting that interest or of knowing his exact rights as against the insurer during his life and upon his death, and, for that reason, he asked for a declaration of his rights by the court. That the courts of Ohio have jurisdiction to entertain an action for a declaratory judgment in a proper case is clear. **Sec. 12102-1, et seq., GC.**

Upon the subject of the averments in a petition in an action seeking a declaratory judgment it is said in 16 Am. Jur., 333 (section 64) that: "In view of the purpose of the statute to settle controversies before they have reached the stage where ordinary legal relief is immediately available, it is clear that the complaint need not state what would be a cause of action apart from the statute. It should, however, disclose the existence, or at best, the ripening seeds, of an actual controversy, although it is not essential that it be alleged in so many words that such controversy exists. It should also show that relief is sought under the Declaratory Judgments' Act and contain a prayer for such relief, either by itself or in combination with affirmative or consequential relief."

The only requirement in pleading in Ohio is that the cause of action or defense shall be stated in ordinary and concise language. **Secs. 11305** and **11314 GC.** The fact that the allegations are so indefinite and uncertain that the precise nature of the charge or defense is not apparent, is not ground for demurrer. **Sec. 11309 GC.** Such a defect may be cured by amendment. **Sec. 11336 GC.** In discussing the degree of definiteness required in pleading under Chancery practice it is said in **31 O. Jur., 603,** that: "It was sufficient if the material facts were plainly and succinctly alleged, with the necessary circumstances of time, place, manner and other incidents; this would seem to be equally true of a petition

under the Code, which is largely adopted from principles of equity pleading. Moreover, the rule is considerably relaxed where the facts are peculiarly, and almost exclusively, within the knowledge of the defendant. —— If the facts in the allegations of the petition are indefinite, uncertain, etc., the proper method of objection is by motion to make definite and certain. Such an objection cannot be raised by demurrer."

The allegations of this amended petition show that the plaintiff has an interest or ownership in two written insurance policies, in possession of the defendant, that a controversy has arisen not only as to matured rights thereunder, but also as to rights that will mature upon his death, and he asks for a declaratory judgment as to such matters. It seems to us that he has brought his case within the specific provisions of §12102-2 GC, providing that: "Any person interested under a—written contract ——. may have determined any question of construction or validity arising under the —— contract."

In 16 Am. Jur., 311, it is stated: "Declaratory judgments have been rendered in numerous cases as to the validity and construction of insurance policies of various kinds and as to the rights arising therefrom."

We hold that the allegations of the third cause of action in the amended petition are a sufficient statement of an abstract cause of action as against a general demurrer.

(4) We are now brought to the question of whether the fact that the plaintiff is the husband of the defendant Alma Madget prevents these causes of action from arising or prevents him from asserting them against her.

In 27 Am. Jur., 199, it is stated:

"At common law neither spouse can sue the other for a tort on his or her property. However, the view has been taken that the common law merely suspends the remedy for such a tort until discoverture by death or divorce, after which an action can be brought therefor against the other spouse or his or her representative. In some jurisdictions statutes make husband and wife liable to each other for torts by one on the property of the other. There is a difference of opinion as to whether such liability exists by virtue of Married Women's Acts. Under Married Women's Acts permitting a wife to sue for a tort to her separate property, but not expressly permitting her to sue her husband therefor, she may, despite the absence of an express provision, maintain such a suit against her husband, at least where

she is justifiably living apart from him. It has been so held with respect to replevin, detinue, trover and conversion, and trespass and ejectment. Similar actions by a husband against his wife have been held maintainable. However, under some statutes the contrary view has been taken. Some statutes have been construed to enable a wife to maintain a suit in equity against her husband to protect her separate property, but not to enable her to maintain an action at law to protect her property against his claims or acts."

This common law incapacity of the wife to resort to the courts to assert rights in personal property owned by her constituted no real limitation upon her right to sue because the wife had no title to personal property during coverture. What had or would have been hers was his upon marriage. In 26 Am. Jur., 865, it is said:

"A wife's tangible personal property—her goods and chattels —of which she has actual or legal possession, whether such property is hers at the time of marriage or comes to her during coverture, vests, by virtue of their marriage, in her husband under the rule of the common law, and he has the same degree of property therein and the same powers with respect thereto that she, if she were sole, would have; this is true although he asserts no right in such property and does not reduce it into his actual possession. Money in the hands of the wife at the time of marriage becomes the property of the husband, at common law, to the same extent as her chattels."

This same rule applied to the wife's choses in action, and to contingent and limited interests, such as tenancy in common in personalty, (Id. 686; sec. 59) provided he reduced them to possession. Self-help was sufficient for the husband's absolute dominion. Resort to the courts was unnecessary.

The question is whether the incapacity of the husband to sue his wife that existed at common law has survived the Ohio Married Women's Act, and prevents him from maintaining an action against his wife upon a cause of action involving property rights not arising out of the marital relation.

Looking at the statutes it would seem that the purpose of the legislature was to remove all significance to the marital relation, when considering property rights of the husband

or wife that did not arise out of and were not dependent upon the marital relation. By §7998 GC, it is enacted that: "Neither husband nor wife has any interest in the property of the other" except the right of support, dower and right to remain in the mansion house, etc., as provided by law. **Sec.** **7999 GC,** it is enacted that: "A husband or wife, may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried," but, by the following section (8000) the generality of the preceding section is limited so that they are precluded from altering their legal relations except to agree upon an immediate separation and make provision for the support of either of them and their children during the separation.

Now how have these statutes been construed and applied?

We have been cited to no Ohio case in which the right of the husband to maintain an action of this kind against the wife has arisen. There are cases involving the right of the wife to contract with her husband and to maintain an action against him.

In **Shafer v. Shafer, 30 Oh Ap, 298,** this Court held that §§7998, 7999 and **8001 GC,** effected a complete emancipation of the wife except as expressly stated in the statutes, and that, therefore, she could maintain an action in partition of real estate against her husband.

In **DuBois v. Coen, Exr., 100 Oh St, 17,** the Court was called upon to decide whether notes executed by the husband payable to his wife in consideration of her release of her right to inchoate dower, and after his death to a year's support and to live in the mansion house, and a distributive share in his estate, under the laws of Ohio, was enforceable by the wife's executors. The Court construed §8000 GC, and held as stated in the 4th paragraph of the syllabus that: "The term 'legal relations' used in the act comprises not only the purely marital relations existing between them, but also the property provisions which the law gave to each upon the death of a consort."

The Court held that as these notes were not given as part of an agreement for immediate separation they were unenforceable. The power and right of the husband and wife generally to contract with one another and to enforce the contracts by action in court was assumed. It was the exception to the general right to contract and sue that was involved.

Speaking of the effect of the "Act to define the rights and liabilities of husband and wife," passed March 19th, 1887

(84 O. L. 132) the Court said at page 21, that: "It lifted the wife above the limitations which restricted her contractual powers and put her upon a plane with her husband thereby giving to her all the freedom of contract which he himself had."

It should be noted that the court was sharply divided. Two of the judges were of the opinion that "legal relations" meant "marital relations" and that these notes were binding and enforceable in this action.

In **Hoagland v. Hoagland, 113 Oh St, 228,** the Court was called upon again to construe these sections in an action in which the question was whether dower and distributive share could be released in an agreement contemplating immediate separation. The husband had died and the action was by his heir to quiet title against the claim of the wife for dower. The Court held that the contract was binding upon the wife and quieted the title against her claim for dower. The only difference between this case and DuBois v. Coen, Exr., supra, was that in one case the release of dower and distributive share was a part of an agreement for immediate separation, and in the other separation formed no part of the agreement. In Hoagland v. Hoagland as well as DuBois v. Coen, no question was raised as to the capacity of the plaintiff to maintain the action. It was the power to contract, not the capacity to sue that was discussed. If the capacity to sue was doubted by any one, silence on the subject would have been broken by some one.

In **State v. Phillips, 85 Oh St, 317,** the Court was presented with the question of whether the Married Women's Act taken in conjunction with the section of the Criminal Code defining larceny, authorized the prosecution of the wife for larceny when she had converted to her own use the personal property of her husband. The Court held, as stated in the syllabus, that:

"The Common law rule that neither husband nor wife can be prosecuted for larceny of the goods of the other, is not abrogated by §§7995 to 8004 GC, defining the rights and liabilities of husband and wife, nor by §12447 GC, defining larceny. An intention of the legislature to abolish an established rule of the common law and to create a crime where none existed before, must clearly and unmistakably appear."

Counsel for appellee relies strongly on this language found on page 324 of the opinion:

"Moreover, the unity of husband and wife, as recognized in the common law, is founded not merely on a community of goods, but upon the recognized obligation of both to the family and to society. The unit of society is not the individual but the family; and whatever tends to undermine the family, by the irrepealable laws of nature will crumble and destroy the foundations of society and the state."

We think the trend of the Court's reasoning is more adequately shown on page 323 by this language:

"The legislature was contemplating the expressed purpose of the statutes, and that only. **They were not at that time considering crimes and criminal procedure;** and surely they cannot be presumed to have intended a thing which they did not clearly express and which is fraught with such far-reaching and radical consequences to the law of the domestic relations, for the abrogation of the doctrine of the legal unity of husband and wife, when pushed to its logical conclusion, would not only create crimes where there were none before, but would also authorize a husband or wife to maintain civil actions for tort against the other, such as actions for personal injuries, assault, false imprisonment, or slander."

The two dominant thoughts expressed here are that the legislature in passing the Married Women's Act did not have in contemplation the creating of crimes and modifying the application of the criminal laws, and the other thought was that it did not contemplate the creation of causes of action for purely personal torts of the wife against the husband, or the husband against the wife. We believe a reading of the chapter headed: "Husband and Wife" (§7995, et seq, GC) makes this manifest. Those sections modify the common law in certain respects. The common law rights of the husband and wife in the property of the other were abolished, and it was enacted that neither should have any interest in the property of the other except as stated in the statute. With certain stated exceptions, they were given the right to contract as freely with one another and with others as though they were unmarried.

By providing that neither should have any interest in the property of the other except as stated, the legislature in effect enacted that the state would lend its aid to the husband or

wife in preventing the other from invading the property rights of the other. As stated by Justice Cardozo property is no more than "the bundle of privileges" sanctioned by law—and the usual method of securing such property rights is by recourse to the courts for their enforcement, in the proper forms by the appropriate remedy, regardless of whether it would have been called ex contractu or ex delicto at common law. A right conferred by law is a right enforceable by law. There can be no right without a remedy.

When the legislature enacted that husband and wife might contract with one another as though unmarried except that they could not alter their legal relations, it necessarily meant that the state would assist the promisee to enforce the contractual obligation against the promisor. By so doing, it would be no more than assisting in protecting the property right created by the contract.

We find no case in Ohio denying the right of the husband to maintain an action to recover his property from his wife or seeking damages on account of its conversion. In **Finn v. Finn, 19 Oh Ap, 302,** the Court held that the wife could not maintain an action to recover damages on account of personal injuries caused by defendant's negligence and did make the broad statement, in the opinion that: "Had it been the intention of the Legislature to permit husband and wife to sue each other for injuries to the person or property of the other, it surely would have so declared by express and clear legislative enactment" but that statement was purely gratuitous. Neither State v. Phillips, supra, or any other case cited by the Court supports the broad statement. They all relate to torts causing injury to the person. None of them relates to torts causing damage to property.

Nor have we found any Ohio case holding that the husband could maintain an action in replevin or conversion against the wife. In other jurisdictions, varying results have been reached depending on the exact wording of the statutes in the different states. We believe in none of them has the legislature granted greater freedom to contract and to hold property free from the common law disabilities than Ohio.

In Eddleman v. Eddleman, 109 A. L. R., 877, (183 Ga. 766, 189 S. E. 833) the Court held as stated in the syllabus, that:

"While the statutes of this state embodied in the Code of 1933, §§2-2201, 53-501, 53-502, 53-503, do not purport to change the common law in respect to personal torts committed by one spouse against the other, they do change the

common law in respect to property rights of the wife. With respect to such rights she is a feme sole, and may be sued by her husband in a bail-trover proceeding for recovery of his personal property converted by her."

This result was reached in construing a statute that is certainly no broader than our statute. In construing the statute to authorize an action in conversion by the husband against the wife, the Court, quoting from an earlier Georgia case, said at page 880:

"In the case of Huff v. Wright, 39 Ga. 41, 43, it was declared by this court that husband and wife are no longer a unit, one person in law, with all the property vested in the husband as the head of the family, but so far as property is concerned two distinct persons, with separate and distinct rights. In a word, the common law rule upon this subject no longer prevails in this state. Every married woman is, as to her property, a feme sole, with power to purchase, hold and convey property, contract and be contracted with, sue and be sued as a feme sole. This, under the new order of things, being the status of married women as to their property, rights and liabilities, why may not this wife be sued as a man could be sued, and made to respond precisely in the same manner, as to all contracts upon which she could bind her estate? We see no reason."

And, at 881, the Court, after reviewing the authorities, stated its own conclusion thus:

"While the statutes of this state, embodied in the Code, §2-2201 (Const. Art. 3, Sec. 11, par. 1), and §§53-501, 53-502, 53-503, do not purport to change the common law in respect to personal torts committed by one spouse against the other, they do change the common law in respect to property rights of the wife. With respect to such rights she is a feme sole, and may be sued by her husband in a bail-trover proceeding for recovery of his personal property converted by her. It follows that the Court of Appeals erred in affirming the judgment granting a nonsuit."

In the case of Geary v. Geary, 12 Atl. (2d) 23, (338 Pa. 385) the facts bear a striking resemblance to the facts in

this case. In that case the husband sued in equity to recover from his wife the possession of three policies of life insurance which she was withholding from him. The husband was the insured and the wife was the beneficiary, with the right reserved in the insured to change the beneficiary. The parties had separated and the wife had taken the policies with her without the husband's consent. The husband had been ordered to pay for the support of the wife. On this subject, the Court said at page 24:

"There is no merit in defendant's contention that as a creditor of her husband under the order of support she is justified in retaining these policies. They were not pledged to her as security for plaintiff's obligation, nor has she asserted any facts which would entitle her to such security. It does not appear that plaintiff intends to dispose of the policies without adequate consideration, or that such a disposition would render him insolvent. Furthermore, a creditor may not seize possession of the property of his debtor upon the mere apprehension that a fraudulent conveyance of the property in the future is contemplated."

And on the right of the husband to maintain the action against the wife to recover his property the Court at page 25 said:

"Since, as we have concluded, plaintiff has the sole right to possession of the policies evidencing the insurance contracts, the present action is clearly permitted by the quoted provision of the act. See Schomaker v. Schomaker, 247 Pa. 444, 93 A. 460; Burke v. Burke, 307 Pa. 518, 162 A. 199. Regardless of whatever rights defendant may have in the proceeds of the policies, the documents themselves are the 'separate property' of the husband within the meaning of the Act, wherein the term is used 'not * * * in any technical, but in a broad and comprehensive, sense': Morrish v. Morrish, 262 Pa. 192, 198, 105 A. 83, 85."

An examination of the legal encyclopedias and text books discloses that the divergent results reached by the different courts have resulted from the difference in statutory language. We believe, however, that the distinction between purely personal torts and torts affecting property rights is generally recognized.

In the case at bar, we are only required to determine whether the plaintiff has any remedy of any sort whereby he can assert his right in the insurance policies against his wife. He prays for a declaration of his rights. On demurrer, it is sufficient if his amended petition shows a right enforceable in any form of action to require the overruling of the demurrer. We are of the opinion that his amended petition shows a right, and that the law affords a remedy.

For these reasons, we are of the opinion that the court erred in sustaining the demurrer.

The judgment is reversed, and the cause remanded for further proceedings according to law.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion and judgment.