AMERICAN HOME ASSURANCE COMPANY, Plaintiff-Appellant, *v.* NORTHWEST INDUSTRIES, INC., *et al.,* Defendants-Appellees.

First District (3rd Division)   No. 76-681

Opinion filed June 29, 1977.—Rehearing denied August 9, 1977.

Stuart S. Ball, George A. Platz, Tom W. Stonecipher, and Michael W. Davis, all of Chicago, and David M. Tyler, of Detroit, Michigan (Sidley & Austin and Sommers, Schwartz, Silver, Schwartz & Tyler, of counsel), for appellant.

Robert F. Finke, Theodore A. Livingston, and Matthew A. Rooney, all of Chicago (Mayer, Brown & Platt, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, American Home Assurance Company, brought this declaratory judgment action to obtain a declaration of the rights and liabilities of itself and its reinsurers as set out in certain contracts of insurance and certificates of reinsurance. The trial court dismissed the suit on the grounds that plaintiff was unable to join a necessary party and that Illinois is a *forum non conveniens* for this litigation. Incorporated in the order of dismissal was a statement by the court that the insurance policies at issue arose in Illinois. Plaintiff appeals from the order of dismissal. Defendants Northwest Industries, Inc., and its subsidiaries Velsicol Chemical Corporation and Michigan Chemical Corporation have taken a cross-appeal from the portion of the order which states that the insurance contracts arose in Illinois. The facts are as follows.

Defendant Michigan Chemical is a manufacturer of various chemicals and chemical compounds. Among its products is the compound magnesium oxide, a dairy feed mineral supplement. It also produces polybrominated biphenyl (hereinafter PBB), a highly toxic flame retardant.

Throughout the period from October 1971 until July 1974, Michigan Chemical supplied substantial quantities of magnesium oxide from its production facility in St. Louis, Michigan, to Farm Bureau Service, Inc. (hereinafter FBS), a Michigan corporation doing business only in Michigan. FBS used the magnesium oxide in feed formulated for distribution to Michigan dairy farmers and for resale to various other farm cooperatives. These products were used primarily at the FBS plant in Michigan.

On a certain occasion or occasions (the exact time is disputed) Michigan Chemical allegedly supplied FBS with PBB instead of magnesium oxide. The PBB was then mixed into the FBS animal feed which FBS used and marketed to a substantial number of Michigan

farmers. The consumption of contaminated feed by livestock resulted in substantial losses to FBS, farmers and numerous other persons. In certain cases the feed caused the death of livestock or necessitated their slaughter. Traces of PBB also have been found in some persons and in grocery store products in Michigan.

There are presently pending in Michigan courts more than 75 law suits against both FBS and Michigan Chemical, and many other cases have been concluded. FBS filed two suits against Michigan Chemical seeking recovery for injuries it suffered and indemnification for claims arising as a result of the feed contamination. In January 1976, FBS and Michigan Chemical entered an agreement whereby they agreed to share farmer losses up to $60 million. Pursuant to the agreement, the FBS actions were dismissed, although Michigan Chemical asserts that the suits will be reinstituted by FBS when the $60 million "cap" is reached.

Five companies provided Michigan Chemical with liability insurance coverage totaling $28 million. The policies provided coverage for property damage and bodily injury. Travelers Indemnity Company (hereinafter Travelers) provided primary coverage for Michigan Chemical, Velsicol and Northwest under a policy effective October 1969 until cancelled. Under this policy these companies were insured for $1 million in liability coverage for damages resulting from any one "occurrence," as defined in the policy, up to an aggregate liability of $1 million for each annual period during which the policy remained in effect.

Lloyd's, London, insured Michigan Chemical, Northwest and Velsicol under various policies effective from February 1, 1970, to February 1, 1973, and February 1, 1973, to October 1, 1975. The extent of the coverage by Lloyd's was $2 million in excess of the $1 million provided by Travelers. The limit of liability was $2 million for any one "occurrence," as defined in its policies, up to an aggregate liability of $2 million per annual period the policies were in force.

American Home provided insurance coverage for Michigan Chemical, Northwest and Velsicol under a policy in effect from November 1, 1971, until November 7, 1974. The amount of coverage was $15 million in excess of the $3 million coverage provided by the Travelers and Lloyd's policies. In the policy issued by American Home was the provision that "the insurance afforded by this policy shall follow all the terms and conditions of" the policies issued by Lloyd's. Therefore, Lloyd's definition of the term "occurrence," the principal issue in the present suit, controls the extent of coverage which American Home must provide defendants Michigan Chemical, Northwest and Velsicol.

Aetna Casualty & Surety Company (hereinafter Aetna) and the Insurance Company of North America (hereinafter I.N.A.) also provided

Michigan Chemical, Northwest and Velsicol with excess coverage. Under these policies the coverage totaled $10 million in excess of the $18 million provided by Travelers, Lloyd's and American Home. Michigan Chemical contends that the Aetna and I.N.A. policies track the policies of American Home and Lloyd's so far as the coverage issues are concerned and that they adopt Lloyd's definition of the term "occurrence."

Subsequent to the issuance of the policies to Michigan Chemical, Northwest and Velsicol, American Home obtained reinsurance from the following companies: North American Reinsurance Company for $2 million, Midland Insurance Company for $5 million, and Gerling-Global Reinsurance Corporation for $5 million. This reinsurance covers the risks plaintiff assumed in its policies issued to Michigan Chemical, Northwest and Velsicol. This reinsurance covered the last $12 million of the $15 million in primary coverage afforded by American Home. Each certificate provided that the reinsurer's liability would follow that of American Home.

Following the evidence of the effect of the contaminated feed on livestock, American Home, Travelers and Lloyd's commenced making payments in settlement of the damage claims asserted against Michigan Chemical, Northwest and Velsicol. Travelers and Lloyd's have paid out $1 million and $2 million respectively and contend that this is the extent of their liability under their policies.

To date, American Home has paid out $15 million in settlement claims against Michigan Chemical, Northwest and Velsicol. It has received full payment from its reinsurers, who have reserved all of their rights against American Home.

Contrary to American Home's position, its reinsurers, Gerling and Midland, maintain that the injuries sustained by claimants did not arise from a single "occurrence." It is Midland's position that under the terms of the Travelers policy an "occurrence" is an event of injury to each claimant and that the liability of Travelers, but not of Lloyd's and American Home, extends to $1 million for each such injury. Midland contends that neither Lloyd's nor American Home is obligated to make payments under their respective policies until Travelers has paid in full its obligation to Michigan Chemical. Accordingly, Midland would not be obligated to make any payments under its contract of reinsurance until Travelers has paid $1 million for each injured claimant, until Lloyd's has paid $2 million for each annual period its policies were in effect, and until American Home has paid $5 million for each of the two years of its policy.

On November 5, 1975, American Mutual Reinsurance Company (hereinafter AMRECO) was granted leave to intervene. AMRECO is an Illinois corporation which reinsured Midland for a portion of the risk

Midland assumed in its certificate of reinsurance issued to American Home. AMRECO has paid sums to Midland under its reinsurance agreement, but contends that Midland was not obligated to make payments to American Home and demands the return of the money paid to Midland.

On August 22, 1975, American Home filed an amended complaint in which it sought a declaration that all PBB-related claims against Michigan Chemical arose from a single "occurrence" as that term applies to the insurance policies and certificates of reinsurance at issue; that American Home's liability be limited to a single aggregate of claims arising from a single occurrence; and that American Home's reinsurers were obligated to pay under the reinsurance agreements upon presentation of proofs of loss for all claims paid by American Home in excess of its retention. It also sought other relief which need not be detailed in this opinion.

Michigan Chemical, Northwest and Velsicol moved to dismiss the amended complaint on the grounds that FBS, Aetna and I.N.A. were necessary parties for a full and complete adjudication of the issues and that Illinois was a *forum non conveniens* in which to litigate the controversy. On December 12, 1975, the trial court dismissed the complaint on the foregoing grounds. In its order, the court noted that Aetna and I.N.A. could readily be joined, but that FBS was a necessary party and was not amenable to process in Illinois. As to *forum non conveniens*, the court found the State of Michigan more convenient and conducive to the expedient resolution of the issues. American Home thereafter requested the court to vacate its order of dismissal and for leave to file a second amended complaint joining Aetna and I.N.A. as parties. In its petition American Home argues that FBS was no longer a necessary party. In support of its position American Home cited the agreement between FBS and Michigan Chemical to share farmer losses, thereby making FBS' interest remote and no longer present and substantial. The trial court denied American Home's motions to vacate the dismissal order and for leave to file the second amended complaint.

We initially shall consider whether FBS is a necessary party to the maintenance of this action in Illinois. It is undisputed that FBS, a Michigan corporation doing business solely within that State, is not amenable to process in Illinois. It is Michigan Chemical's contention that to proceed on the merits of this case in the absence of FBS would result in substantial prejudice to the parties before the court, as well as adversely affect the interests of FBS. We do not agree. We hold that the facts contained in the record before us demonstrate that FBS' interest in the controversy is at best merely a potential future interest and contingent upon the happening of certain events; and that such an interest does not,

under Illinois law, make FBS a necessary party to this suit. *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000; *Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599.

■■■ FBS' status in this case is that of a claimant against the insured Michigan Chemical. Despite American Home's vigorous contentions to the contrary, under Illinois law claimants against the insured ordinarily are necessary parties to actions in which questions of liability insurance coverage are litigated. (*Sobina v. Busby* (1965), 62 Ill. App. 2d 1, 210 N.E.2d 769; *Williams v. Madison County Mutual Automobile Insurance Co.* (1968), 40 Ill. 2d 404, 240 N.E.2d 602.) Since FBS is a claimant of Michigan Chemical, it has a cognizable interest in a determination concerning the extent of liability coverage to be extended to the insureds. However, that is only the first part of the test of determining necessary parties. In *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 422, 52 N.E.2d 1000, the court defined necessary parties as "persons who are legally or equitably interested in the subject matter and the result of the suit * * *. The interest, however, must be a present substantial interest as distinguished from a mere expectancy or future contingent interest." We hold that FBS' status, by virtue of its settlement agreement with Michigan Chemical, fails to satisfy the second part of the test for determining whether a party is necessary to the resolution of a lawsuit in that it does not demonstrate a present substantial interest.

■■ On December 12, 1975, when the trial court deemed FBS a necessary party, there were two suits initiated by FBS against Michigan Chemical pending in Michigan. Subsequent to the entry of that order but before American Home moved to vacate the order of dismissal, FBS and Michigan Chemical entered into an agreement whereby the FBS actions were dismissed and the parties agreed to share farmer losses up to $60 million. It is our opinion that after FBS and Michigan Chemical entered into that agreement, FBS' interest in the instant suit was no longer present and substantial, but contingent upon losses exceeding the $60 million "cap." Counsel for Michigan Chemical stated at oral argument that, in view of the number of claims, that contingency will be reached. Nothing in the record supports that statement, and we view it as mere speculation concerning the merits of those claims and the amounts which will be necessary to settle them. Courts of review place special emphasis on the requirement of joinder of all necessary parties to avoid constitutional infringements, but they do not automatically conclude that any individual or entity claiming an interest in the controversy is necessary for its equitable determination. (*Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599.) The quality of the interest of an absent party is to be determined from the issues of the case as formulated by the pleadings and the evidence before the court. (*McDonald's Corp. v. Smargon* (1975), 31

Ill. App. 3d 493, 334 N.E.2d 385.) The rights of FBS are fixed by the agreement which it entered into with Michigan Chemical. The trial court, therefore, erred in holding that FBS is a necessary party to this litigation.

■■ We next turn to the issue of whether the trial court erred in dismissing this action because Illinois is a *forum non conveniens*. Any discussion of the doctrine must begin with reference to a landmark case of the United States Supreme Court. (*Gulf Oil Corp. v. Gilbert* (1946), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839.) There, the court sets forth the relevant considerations which a trial court should weigh when ruling on a motion to dismiss under the doctrine of *forum non conveniens*:

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. * * * The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, vex, harrass, or oppress the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. *But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.*" (Footnote omitted; emphasis ours.) 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67 S. Ct. 839.

■■ In *Whitney v. Madden* (1948), 400 Ill. 185, 79 N.E.2d 593, and its progeny, our own supreme court followed the guidelines set out in *Gulf Oil Corp.* Therefore, under Illinois law, courts are reluctant to dismiss for *forum non conveniens* unless the factors considered balance heavily in favor of defendant. (*Presbyterian Church v. St. Louis Union Trust Co.* (1974), 18 Ill. App. 3d 713, 3 N.E.2d 412.) Such a motion should be denied when there is a relevant connection between the litigation and the forum which is chosen. *Giseburt v. Chicago, Burlington & Quincy R.R. Co.* (1964), 45 Ill. App. 2d 262, 195 N.E.2d 746.

American Home is a New York corporation doing business in Illinois. Michigan Chemical is a Michigan corporation that conducts business in Illinois and has its corporate headquarters in Chicago. Northwest, its parent corporation, is a Delaware corporation whose executive offices are located in Chicago. Velsicol, another subsidiary of Northwest, is a Delaware corporation licensed and doing business in Illinois. The insurance policy issued by American Home to Michigan Chemical, Northwest and Velsicol was solicited through an independent broker in Chicago and was prepared, entered into and delivered in Chicago. The

policy covers risks arising in Illinois, Michigan and elsewhere. On the basis of the foregoing facts, it can be deemed that Illinois has a relevant connection with and cognizable interest in this controversy. *Giseburt v. Chicago, Burlington & Quincy R.R. Co.*

It does not appear that the alternative forum, the State of Michigan, is significantly more conducive to the expedient and equitable resolution of this controversy which is required for the doctrine of *forum non conveniens.* Trial in Michigan would still necessitate witnesses traveling and the transport of necessary documents. The difference in miles is negligible, and any additional expense which trial of this case. in Cook County might entail is not great enough to deprive plaintiff of its rightful choice of forum.

Michigan Chemical also maintains that some of the Michigan witnesses whom it might be necessary to call are not subject to compulsory process, thus necessitating that the case be tried by use of depositions, a practice which the court in *Gulf Oil Corp. v. Gilbert* noted is an unsatisfactory manner in which to try a case. However, under Supreme Court Rule 237(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 237(b)), any employee of Michigan Chemical can be required to testify in person. Moreover, by moving the site of the trial to Michigan, American Home would be precluded from compelling the presence of the nonparty Illinois witnesses which it claims will be called to testify. Therefore, trial of the case in Michigan rather than in Illinois would not eliminate the possibility of presenting part of the case through deposition testimony.

Although Michigan Chemical contends that American Home has engaged in forum shopping by filing this suit in Illinois, it has not alleged or demonstrated that the Illinois courts are unable to afford it a fair and impartial hearing. Michigan Chemical's primary argument in this respect is that the courts of Michigan are more familiar with the circumstances surrounding this case. Conversely, American Home points out that publicity in Michigan dealing with the severe effect of PBB on livestock would make it virtually impossible to impanel an impartial jury were this case to be tried in Michigan. Michigan Chemical's contention that familiarity with the circumstances giving rise to the PBB claims makes the Michigan court a more desirable location fails to outweigh American Home's right to select a forum. This is so particularly since there is no showing of an intent to harass or oppress defendants. *Whitney v. Madden* (1948), 400 Ill. 185, 79 N.E.2d 593.

Michigan Chemical further claims that, if trial is held in Illinois, it would not be possible for a jury to view the plant at St. Louis, Michigan. In *Gulf Oil Corp.*, the court noted the importance of a view of the premises where such is relevant to a determination of the issues. In the

present case, American Home has filed an affidavit stating that production at that plant has ceased and thus a view would not at all be helpful to the resolution of this action. Michigan Chemical concedes that its plans are to phase out operations at that plant in one or two years, although it does not plan to destroy the structure. The change in circumstances, coupled with Michigan Chemical's failure to show in what manner a view of the plant would be helpful, makes a visit to the plant apparently unnecessary.

■■ Unless the balance of factors relative to the inconvenience of trying the case in the forum court is strongly in favor of defendant, the plaintiff's choice of forum rarely should be disturbed. (*Sears Roebuck & Co. v. Continental Insurance Co.* (1972), 9 Ill. App. 3d 287, 292 N.E.2d 75.) We believe defendants have not shown the balance of relevant factors in the present case to be strongly in their favor. Therefore, the trial court erred in dismissing the action on the grounds of *forum non conveniens*.

Michigan Chemical relies on the cases of *Cady v. Hartford Fire Insurance Co.* (1965), 56 Ill. App. 2d 429, 206 N.E.2d 535, and *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 273 N.E.2d 353, in support of its contention that the trial court did not abuse its discretion when it dismissed this case under the doctrine of *forum non conveniens*, but those cases are distinguishable from the present case. In *Cady* the plaintiff resided in Kansas City, Missouri, and defendant did business in both Illinois and Missouri. The insurance contract was issued in Chicago. The damaged real estate was located in Missouri. However, one of plaintiff's prayers was for specific performance, and there also existed the possibility that the Illinois court would have to construe and pass upon the constitutionality of a recently enacted Missouri statute. For these reasons, this court upheld the trial court's dismissal on the basis of *forum non conveniens*. In *Fender* the court upheld the trial court's dismissal of the cause of action and stated a belief that the fact that the trial court's discretion had not been "wisely exercised" is insufficient to overturn a ruling declining jurisdiction. However, the court noted the tremendous burden which would be placed upon defendant. The site of the occurrence was in Belleville, Illinois, while almost all of the witnesses resided in Texas. The plaintiff himself was a resident of Texas and defendant was a Missouri corporation with its principal place of business in Texas. It was suggested that plaintiff's choice of a remote forum was to place defendant at a disadvantage in proving plaintiff's prior accidents and injuries. No such situation exists in the present case.

American Home also contends that the trial court erred in denying it leave to file its second amended complaint. In view of our decision reversing the ruling of the trial court regarding necessary parties and

*forum non conveniens*, we need not reach this issue. Since this case is remanded to the trial court, American Home will be afforded the opportunity to amend its pleading in accordance with the Civil Practice Act. Ill. Rev. Stat. 1975, ch. 110, pars. 26, 46.

Michigan Chemical has filed a cross-appeal urging that the trial court erred in incorporating in its dismissal order a statement that the contracts of insurance arose in Illinois. We hold that the statement of the trial court cannot be deemed a finding on the issue of where the insurance contracts arose.

As noted by Michigan Chemical, the record in this case is concerned primarily with whether FBS is a necessary party and whether Illinois is a *forum non conveniens*. Any evidence which refers to the making of the contracts was given in reference to whether Illinois was the proper forum. For that reason, the evidence is piecemeal and incomplete on the question of where the contracts arose. The statement made by the trial judge was later incorporated into his order at the insistence of counsel for American Home. At several points in the proceedings the judge observed that the evidence was insufficient to permit a definitive finding of the situs of the policies. Subsequent to his denial of American Home's motion to vacate the order of dismissal, the judge stated that he did not believe that the question of the situs of the contracts was before the court. It is our belief that at this preliminary stage of the proceedings and on the basis of the contents of this record, no finding concerning the situs of the contracts was intended to be made. Therefore, we leave it to the trial court upon remandment and after a full hearing to determine where the contracts of insurance arose and the appropriate law which governs their interpretation.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

JIGANTI and McGILLICUDDY, JJ., concur.