# OWENS–CORNING FIBERGLAS CORPORATION

## v.

# ALLSTATE INSURANCE COMPANY et al.

Court of Common Pleas of Ohio,
Lucas County.

No. CI90–2521.

Decided Feb. 24, 1993.

*Connelly, Soutar & Jackson, William M. Connelly* and *Steven Smith; Covington & Burling, Mitchell F. Dolin, Jackson Sharman* and *Eric Lasker; Davis & Young Co., L.P.A.,* and *Martin J. Murphy,* for Owens–Corning Fiberglas Company.

*Shumaker, Loop & Kendrick* and *Peter Silverman; Sullivan, Ward, Bone, Tyler, Fiott & Asher, Thomas Slavin* and *Thomas Auth; Mayer, Brown, & Platt* and *Michael Gill;* and *Joseph Walsh,* for Protective National Insurance Company.

---

RICHARD W. KNEPPER, Judge.

This matter is before the court upon a cross-motion for summary judgment filed by Protective National Insurance Company ("Protective").[1] Upon review of the relevant evidence, the parties' memoranda, the transcript of the November 19, 1992 oral argument, and the applicable law, the court finds that the motion is not well taken.

## I. *PERTINENT BACKGROUND*

This case is a declaratory judgment action filed by plaintiff, Owens–Corning Fiberglas Corporation ("OCF"), against several of its excess insurers[2] with regard to asbestos-related products liability claims filed against OCF. OCF essentially seeks a court declaration that each of the defendants is jointly and severally liable to indemnify OCF for all asbestos liability it incurs through judgment or settlement.

In its motion, Protective contends that it must be dismissed from the action and relies on two theories in support. First, Protective alleges that, since the primary and underlying excess layers of coverage have not yet been exhausted, any matters concerning Protective's obligations as an excess carrier are not ripe for the court's review. Second, Protective argues that its policy's so-called "no-action" clause precludes any action against it unless and until the extent of OCF's asbestos-related liability is finally determined either at trial or through settlement.

## II. *STANDARD OF REVIEW*

A motion for summary judgment will be granted only when there is no dispute of material fact, the movant is entitled to judgment as a matter of law,

---

1. Old Republic National Insurance Company ("Old Republic"), another defending excess carrier, has joined Protective in this motion.

2. An underlying carrier, Aetna Casualty & Surety Company, has since been dismissed.

and construing the evidence most strongly against the movant, reasonable minds can come only to a conclusion adverse to the nonmovant. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. *Id.* Where, as in the instant case, the nonmovant bears the burden of producing evidence on an issue at trial, the nonmovant may not rely on the allegations of its pleadings in response to a summary judgment motion but must affirmatively demonstrate the existence of some triable issue of fact. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Mere conjecture or speculation presented by the nonmovant, however, is insufficient, as the nonmovant must do more than merely present some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (1986), 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538, 552.

## III. *DISCUSSION*

Protective's motion must be denied. First, the court finds the matter justiciable upon review of both R.C. Chapter 2721 and Protective's cited authorities. Second, the better-reasoned decisions decline to apply "no-action" clauses in comparable fact situations.

### 1. *Justiciability*

■ The court finds that the instant case is justiciable vis-a-vis Protective. This finding is premised on the broad scope of R.C. Chapter 2721, concerns for judicial efficiency, and the proposition that neither the existence of factual issues nor the lack of remedies at law bars courts from entertaining declaratory actions. The court, further, finds that Protective's cited cases are inapplicable.

First, Ohio's Declaratory Judgment Act clearly permits the court to review contracts and their construction:

"Any person interested under a * * * written contract * * * may have determined any such question of construction or validity arising under such * * * contract * * * and obtain a declaration of rights, status, or other legal relations thereunder." R.C. 2721.03.

The General Assembly has required liberal construction of R.C. Chapter 2721: "Sections 2721.01 to 2721.15, inclusive, of the Revised Code are remedial, and shall be liberally construed and administered." R.C. 2721.13. See, also, *Sessions v. Skelton* (1955), 163 Ohio St. 409, 56 O.O. 370, 127 N.E.2d 378: "The remedy afforded by the Declaratory Judgment Act is to be liberally construed and freely applied." *Id.*, paragraph one of the syllabus.

■ Trial courts, for their part, are given broad latitude as to declaratory judgment actions:

"Whether to proceed in a declaratory relief action is a matter for the determination of the trial court in the first instance." *State ex rel. Dickison v. Lake Cty. Court of Common Pleas* (1971), 28 Ohio St.2d 179, 180, 57 O.O.2d 411, 277 N.E.2d 210, 211.

Case law, additionally, encourages the use of declaratory judgment: "[T]he remedy should be applied liberally whenever the result will be to settle the controversy one way or the other." *Ohio Farmers Indemn. Co. v. Chames, infra,* 170 Ohio St. 209, 213, 10 O.O.2d 164, 166, 163 N.E.2d 367, 371.

■ Second, concerns for judicial efficiency were addressed in *Ohio Farmers Indemn. Co. v. Chames* (1959), 170 Ohio St. 209, 10 O.O.2d 164, 163 N.E.2d 367. *Chames,* concededly, involved a somewhat different factual setting in that *Chames* addressed insurance coverage for an automobile accident that had already occurred. The case, however, is applicable not for its fact scenario but rather for its emphasis on judicial economy:

"In many instances this type of action will determine in advance the advisability of instituting or continuing the prosecution of negligence actions against the insured or others which may come within the protection of the policy and often accomplishes the speedier and more economical disposition of cases of this kind and the avoidance of a multiplicity of actions. * * * *A primary purpose of the declaratory judgment action is to serve the useful end of disposing of uncertain or disputed obligations quickly and conclusively.*" (Emphasis added.) *Id.* at 213, 10 O.O.2d at 166, 163 N.E.2d at 371.

■ Third, it is clear that not all of the facts need to be established for a declaratory action to be ripe:

"[A]n action for a declaratory judgment may properly be maintained by or against an insurer to fix nonliability or liability under a liability insurance policy, notwithstanding that factual determinations are necessary to make a declaration on that controlling issue. * * *

"Moreover, * * * the pendency of an action or even the threat of an action affords a sufficient basis to permit an insurer [and, presumably, an insured] to invoke declaratory-judgment statutes, where the object is to secure a determination as to the insurer's obligation to defend an action or to pay a judgment which might be rendered in such action." (Citations omitted.) *Chames* at 214, 10 O.O.2d at 166–167, 163 N.E.2d at 371.

This finding is in keeping with R.C. 2721.04, which provides that "[a] contract may be construed by a declaratory judgment either before or after there has been a breach thereof."

Similarly, a court need not dismiss a declaratory judgment action solely because remedies at law are not yet practicable. For instance, in *Madget v. Madget* (1949), 85 Ohio App. 18, 40 O.O. 37, 87 N.E.2d 918, the court held:

"In view of the purpose of the [declaratory judgment] statute to settle controversies before they have reached the stage where ordinary legal relief is immediately available, it is clear that the complaint need not state what would be a cause of action apart from the statute. It should, however, disclose the existence, or at least the ripening seeds, of an actual controversy, although it is not essential that it be alleged in so many words that such controversy exists." *Id.* at 23–24, 40 O.O. at 40, 87 N.E.2d at 922.

In the more recent case of *Eaton Corp. v. Aetna Cas. & Sur. Co.* (Sept. 23, 1991), Cuyahoga C.P. No. 189068, unreported, the court was presented with nearly the same fact pattern as in the case *sub judice*. Specifically, the plaintiffs-insureds and the defendants-insurers were signatories to an excess insurance policy which provided coverage when the lower levels of insurance were exhausted. Plaintiffs brought a declaratory judgment action, seeking an order requiring the defendants to indemnify the plaintiffs' environmental waste liabilities. The defendants moved for dismissal, alleging that plaintiffs failed to provide any facts indicating the excess coverage would ever be triggered. It is true that the plaintiffs failed to point to any specific expenditures or projected costs. Judge Lesley Brooks–Wells, nonetheless, rejected the defendants' motion, noting that exact precision is not necessary to maintain a declaratory judgment action:

"It is common knowledge that environmental clean-up is expensive, the precise costs difficult to estimate, and the claims are proliferating. * * * Even if plaintiffs had alleged 'specific' projected costs, such estimates would not, at this stage, permit certainty as to what coverage, if any, would be triggered." *Id.* at 3.

*Eaton,* as did the many cases before it, stressed the significance of judicial economy:

"Legal issues common to primary and excess carriers, where appropriate, should be determined simultaneously. Comprehensive resolution of the interpretive dispute underlying the declaratory judgment suit avoids the costs in time and resources of litigation *ad seriatim* and can contribute to early resolution of controversy." *Id.* at 3–4.

See, also, *Kunkel v. Continental Cas. Co.* (C.A.10, 1989), 866 F.2d 1269, in which the court ruled that a substantial controversy was present even though the existence of insurance coverage was contingent upon (1) the outcome of the

underlying action and (2) a determination that any liability incurred by the insureds is not subject to any of the policy's exceptions. *Id.* at 1271.[3]

Likewise, in the instant case, the acts giving rise to OCF's asbestos liabilities have already occurred. They are real, as are the adverse interests of OCF and its insurers. OCF has been, and will continue to be, sued for injuries resulting from the use of its asbestos products. The case, therefore, is ripe for declaratory judgment review. A holding to the contrary would result in a wasteful, claim-by-claim, policy-by-policy approach in determining the applicability of each policy, which would run contra the essential function of declaratory judgment actions.

Finally, Protective refers to several authorities in support of its justiciability argument. These cases, however, are factually distinguishable. For instance, three cases are "direct action" suits, in which the aggrieved plaintiff sought a judicial determination of the potential insurance proceeds before filing against the insured tortfeasor. See *D.H. Overmyer Telecasting Co. v. Am. Home Assur. Co.* (1986), 29 Ohio App.3d 31, 29 OBR 32, 502 N.E.2d 694; *Laguna Publishing Co. v. Emp. Reinsurance Corp.* (C.D.Cal.1985), 617 F.Supp. 271; *Batteast v. Argonaut Ins. Co.* (1983), 118 Ill.App.3d 4, 73 Ill.Dec. 609, 454 N.E.2d 706; *Spurgeon v. State Farm Mut. Ins. Co.* (Fla.App.1964), 169 So.2d 343.

Two other cases, concededly, involve judicial determinations between insurers and the insureds, as does the instant case. One of these two, however, does not even address the question of ripeness; rather, the insured's complaint was dismissed on procedural issues of joinder and *forum non conveniens.* See *Am. Home Assur. Co. v. Northwest Indus.* (1977), 50 Ill.App.3d 807, 8 Ill.Dec. 570, 365 N.E.2d 956. *Northwest,* moreover, held that the particular party's interest in the controversy was "at best merely a *potential* future interest." (Emphasis added.) 50 Ill.App.3d at 811, 8 Ill.Dec. at 574, 365 N.E.2d at 960. This potential would be realized if damages were to exceed $60 million. *Id.,* 50 Ill.App.3d at 812–813, 8 Ill.Dec. at 575, 365 N.E.2d at 961. The court noted, further, that "[n]othing in the record" suggested that the contingency would be satisfied and concluded that the record offered "mere speculation" that the losses would meet the requisite threshold. *Id.*

---

3. *Kunkel* is one of many federal decisions upholding the proposition that neither immediate liability for damages nor a liquidation of an underlying insurer's obligation is necessary to establish a justiciable controversy under the federal Declaratory Judgment Act. *Riehl v. Travelers Ins. Co.* (C.A.3, 1985), 772 F.2d 19; *Keene Corp. v. Ins. Co. of N. Am.* (C.A.D.C.1981), 667 F.2d 1034, certiorari denied (1982), 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 rehearing denied (1982), 456 U.S. 951, 102 S.Ct. 2023, 72 L.Ed.2d 476; *ACandS v. Aetna Cas. & Sur. Co.* (C.A.3, 1981), 666 F.2d 819. Ohio declaratory judgment law is to be construed so as to harmonize with federal laws on declaratory judgments. R.C. 2721.14; *In re Wilson* (C.P.1963), 92 Ohio Law Abs. 200, 23 O.O.2d 440, 192 N.E.2d 119. Accordingly, a similar reading is required in this case.

In the final case, the court actually kept some insurers in the case, finding that, under the terms of their policies, coverage had either already been triggered or was *likely to be triggered.* The court granted summary judgment only to those insurers against whom the insured had made "insufficient allegations" of liability, "either actual or potential." See *Emp. Ins. of Wausau v. McGraw–Edison Co.* (Aug. 8, 1987), W.D.Mich. No. K86–48 CA, unreported, at 4, 1987 WL 58061.

In contrast, OCF has removed speculation from the instant case with evidence that the excess coverage will likely be triggered. It is clear that these legal issues are common to all excess carriers, including Protective. Addressing these common matters simultaneously avoids piecemeal litigation and may promote settlement[4] of the case. Accordingly, the court finds that a substantial controversy exists between OCF and Protective.

### 2. *The "No–Action" Clause*

In its second argument, Protective insists that the Transit and Aetna policies[5] contain "no-action" clauses which prevent OCF from filing suit against it until the amount of OCF's obligation to pay has been "finally determined" either by judgment against OCF or by actual settlement between OCF and a particular asbestos claimant. The court rejects this proposition for two reasons. First, the weight of applicable law declines to apply "no-action" clauses in these contexts. Second, the court finds that Protective's cited authorities are inapposite.

### a. *Applicability of the clause*

As for the applicability of "no-action" clauses in cases involving declaratory actions filed by insured parties, there appears to be a split of authority. On the one hand, case law exists supporting strict construction of "no-action" clauses, *i.e.,* that, quite simply, no action shall be taken against the insurer unless and until there has been full compliance with the policy's terms and until the insured's

---

**4.** See, *e.g., ACandS, Inc. v. Aetna Cas. & Sur. Co., supra,* 666 F.2d 819, 823 ("The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment. * * * To delay for the sake of more concrete development would prevent the litigants from shaping a settlement strategy * * *."); *Rubins Contrs., Inc. v. Lumbermens Mut. Ins. Co.* (C.A.D.C.1987), 821 F.2d 671, 674 ("It seems inescapable that uncertainty over coverage would skew the settlement process.").

**5.** The Protective (and Old Republic) excess policy "follows form" to an underlying policy. While it is unclear whether this underlying policy is one issued by Aetna Casualty Company or Transit Casualty Company, both policies contain the following "no-action" clause:

"No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the amount of the INSURED's obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY."

obligation has been finally determined either by settlement or at trial. See, *e.g.,* *Batsakis v. Fed. Deposit Ins. Corp.* (W.D.Mich.1987), 670 F.Supp. 749, in which the court expressly rejected a request to distinguish actions for monetary damages from actions for declaratory relief. A recent case from the United States Sixth Circuit Court of Appeals, moreover, arrived at the same conclusion. *Haxton v. CNA Fin. Corp.* (Nov. 2, 1990), C.A.6, Nos. 89–6072 and 89–6116, 917 F.2d 1304, unreported. See, also, *Zaborac v. Am. Cas. Co. of Reading* (C.D.Ill. 1987), 663 F.Supp. 330.

The majority view, however, is to reject such a rigid application. The United States Ninth Circuit Court of Appeals discussed the issue in *Eureka Fed. S. & L. v. Am. Cas. Co. of Reading* (C.A.9, 1989), 873 F.2d 229. In a concise, three-tiered analysis, the *Eureka* court first cited a string of cases which distinguish actions by third parties (also known as "direct actions") from those filed by insureds under the policy. See *Paul Holt Drilling, Inc. v. Liberty Mut. Ins. Co.* (C.A.10, 1981), 664 F.2d 252, 254; *Simon v. Maryland Cas. Co.* (C.A.5, 1965), 353 F.2d 608, 612; *Okada v. MGIC Indemn. Corp.* (D.Hawaii 1985), 608 F.Supp. 383, affirmed in part, reversed in part on other grounds (C.A.9, 1986), 823 F.2d 276. Relying on these authorities, the court concluded that no-action clauses are not to be applied universally: "The no action clause does not bar an action against the insurer prior to termination of the underlying dispute." *Eureka,* 873 F.2d at 232–233.

Second, the Ninth Circuit observed that, in addition to distinguishing insureds from third parties, courts have also winnowed declaratory cases from monetary actions, holding that no-action clauses do not bar actions concerning issues of coverage and defense. See, *e.g.,* *Simon v. Maryland Cas. Co., supra,* 353 F.2d at 612; *Paxton & Vierling Steel Co. v. Great Am. Ins. Co.* (D.Neb.1980), 497 F.Supp. 573, 582; *W & J Rives, Inc. v. Kemper Ins. Group* (1988), 92 N.C.App. 313, 318–320, 374 S.E.2d 430, 434–435; *Condenser Serv. & Eng. Co. v. Am. Mut. Liab. Ins. Co.* (1957), 45 N.J.Super. 31, 40–42, 131 A.2d 409, 414, certiorari denied, 24 N.J. 547, 133 A.2d 395.

Finally, Judge Otto R. Skopil noted that the purpose of no-action clauses is to prevent " * * * (1) actions against the insurer for a money judgment by the injured party until the damages have been fixed by final judgment or agreed settlement; (2) nuisance suits against the insurance company; and (3) an injured party or an insured from bringing the insurance company into the underlying litigation with possible resultant prejudice." *Eureka, supra,* 873 F.2d at 233 (citing *Holt, supra,* and *Simon, supra* ). For these reasons, the *Eureka* court chose not to apply the no-action clause to the insured's declaratory judgment action against their insurer.

b. *Protective's authorities*

The authorities on which Protective relies in support of its argument, moreover, are inapplicable. For instance, some cases are "direct action" suits in which a party other than the insured is seeking declaratory relief. See, *e.g., Batsakis v. Fed. Deposit Ins. Co., supra; Ladwig v. Truck Ins. Exchange* (E.D.Wis.1980), 498 F.Supp. 161; *Harville v. Twin City Fire Ins. Co.* (C.A.5, 1989), 885 F.2d 276. Two cases, moreover, were not even before the court on declaratory judgment complaints and, thus, the issue of the applicability of no-action clauses in such contexts was not addressed. *Ladwig, supra; Harville, supra.*

In another case, the court dismissed a declaratory judgment action pursuant solely to the federal declaratory judgment statute, Section 2201, Title 28, U.S.Code; significantly, no mention was made of any no-action clause. *Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.* (S.D.N.Y.1984), 590 F.Supp. 187. Thus, while *Bellefonte* may be worthy of discussion when addressing a broader, case-or-controversy issue, it has no place in a discourse concerning no-action clauses. See, also, *Continental Cas. Co. v. Synalloy Corp.* (S.D.Ga.1986), 667 F.Supp. 1563, affirmed, (C.A.11, 1987), 826 F.2d 1024; *Pitcairn v. Rumsey* (W.D.Mich.1940), 32 F.Supp. 146 (neither of which discusses no-action clauses).

Finally, *Haxton v. CNA Financial Corp., supra,* is arguably Protective's strongest suit because of both its Sixth Circuit status and its express distinction of *Holt, supra.* Reliance on *Haxton,* however, is nonetheless misplaced for several reasons. First, as an unpublished case, it is subject to Sixth Circuit Local Rule 24(c), which provides that citation to unpublished decisions is generally "disfavored." Second, *Haxton* distinguishes *Holt* because the *Holt* insurer did not actually deny the existence of coverage. No mention, however, is made of any such denial in either *Eureka, supra,* or *Okada, supra,* both of which struck down no-action clauses as applied to *insured's* claims against the insurer. Finally, the *Holt* distinction is unimportant because it is unsupported in *Haxton* and because the insurer's denial is absent from the *Holt analysis* (it is discussed only in the *factual background* portion of *Holt* ). It, thus, is unclear that the *Holt* holding is based, in any part, on the insurer's denial.

In view of the declaratory nature of this case and the overall purpose of "no-action" clauses, the court declines to apply the no-action clause at issue to the Protective policy.

## IV. CONCLUSION

Whether or not a court exercises its power to entertain a declaratory judgment action is discretionary. Declaratory judgment law, moreover, is to be construed and applied liberally to resolve questions of contract validity and to promote judicial economy. In view of the likelihood that excess coverage will be trig-

gered, the court finds that an actual controversy exists as to Protective and that a meaningful analysis of OCF's rights and status vis-a-vis its asbestos liability coverage cannot be performed in Protective's (and Old Republic's) absence.

The court, further, finds that the "no-action" clauses at issue do not bar declaratory actions filed by insureds concerning issues of coverage. Accordingly, Protective's motion is denied.

### JOURNAL ENTRY

It is ORDERED, ADJUDGED AND DECREED that the cross-motion for summary judgment filed by defendant Protective National Insurance Company is not well taken and therefore denied.

*Cross-motion denied.*

